## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| GLOBAL EAGLE ENTERTAINMENT INC.,[1] | Case No. 20-11835 (JTD) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket Nos. 40, 85** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases (collectively, the "Cases") for entry of a final order (this "Final Order"), pursuant to sections 105, 361, 362, 363, 364, 507, and 552 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, 9006-1, and 9013 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of this Final Order:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Global Eagle Entertainment Inc. (7800), Airline Media Productions Inc. (2314), Emerging Markets Communications, LLC (0735), Entertainment in Motion, Inc. (3908), Global Eagle Entertainment Operations Solutions, Inc. (3375), Global Eagle Services, LLC (7899), Global Eagle Telecom Licensing Subsidiary LLC (2547), IFE Services (USA), Inc. (2120), Inflight Productions USA, Inc. (8493), Maritime Telecommunications Network, Inc. (9974), MTN Government Services, Inc. (6069), MTN International, Inc. (8559), MTN License Corp. (0314), N44HQ, LLC (0570), Post Modern Edit, Inc. (6256), Row 44, Inc. (2959), and The Lab Aero, Inc. (9831). The Debtors' address is 6080 Center Drive, Suite 1200, Los Angeles, California 90045.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

(i)        authorizing Global Eagle Entertainment Inc., in its capacity as borrower (the "DIP Borrower"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally (the "DIP Guarantors") on a joint and several basis, the DIP Borrower's obligations in connection with a superpriority senior secured credit facility (the "DIP Facility") consisting of a $80,000,000 term loan credit facility (the "DIP Loans"), in accordance with the terms and conditions set forth in the DIP Credit Agreement (as defined below), and all other terms and conditions of the DIP Documents (as defined below) upon entry of the Final Order;

(ii)        authorizing the Debtors to enter into that certain Senior Secured Super-Priority Term Loan Debtor-In-Possession Credit Agreement dated as of July 24, 2020, among the DIP Borrower, the DIP Guarantors, the lenders party thereto (collectively in such capacities, the "DIP Lenders"), and Citibank, N.A., as administrative agent, collateral agent, and escrow agent (in such capacities, the "DIP Agent," and, together with the DIP Lenders, the "DIP Secured Parties") (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Credit Agreement"); and together with the Interim Order (as defined below), this Final Order, and all agreements, documents, and instruments delivered or executed in connection therewith (including the fee letters executed by the DIP Borrower in connection with the DIP Facility), and other guarantee and security documentation, collectively, the "DIP Documents"), and to perform such other and further acts as may be required in connection with the DIP Documents;

(iii)        authorizing the Debtors to use the proceeds of the DIP Loans and the Prepetition Collateral (as defined below), including Cash Collateral (as defined below), in accordance with the Approved DIP Budget (as defined below) (subject to permitted variances set forth herein and in the DIP Credit Agreement) in form and substance acceptable to the required

lenders under and pursuant to the DIP Credit Agreement (the "Required DIP Lenders") to provide working capital for, and for other general corporate purposes of, the Debtors, including for payment of any Adequate Protection Payments (as defined below) and reasonable and documented transaction costs, fees, and expenses incurred in connection with any transactions to be implemented through the Cases;

(iv)    granting adequate protection to the Prepetition First Lien Secured Parties (as defined below) to the extent of any Diminution in Value (as defined below) of their interests in the Prepetition Collateral;

(v)    granting valid, enforceable, binding, non-avoidable, and fully perfected first priority priming liens on and senior security interests in substantially all of the property, assets, and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and each Debtor's estate as created by section 541 of the Bankruptcy Code, of any kind or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (as defined below), subject only to the (x) Carve Out (as defined below), (y) certain liens permitted pursuant to the terms of the DIP Credit Agreement and (z) other valid, perfected and unavoidable liens, if any, existing as of the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) (the "Prior Senior Liens"), in each case, that are senior in priority to the First Lien Loan Liens, on the terms and conditions set forth herein and in the DIP Documents;

(vi)    granting superpriority administrative expense claims against each of the Debtors' estates to parties on account of the Debtors' reimbursement obligations with respect to

the Prepetition L/Cs and DIP L/C Facility (each as defined below) subordinate only to the payment of the Carve Out on the terms and conditions set forth herein and in the DIP Documents;

(vii)    granting superpriority administrative expense claims against each of the Debtors' estates to the DIP Agent and the DIP Lenders with respect to the DIP Obligations (as defined below) over any and all administrative expenses of any kind or nature subject and subordinate only to the payment of the Carve Out on the terms and conditions set forth herein and in the DIP Documents;

(viii)    waiving the Debtors' and the estates' right to surcharge against the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(ix)    providing that the "equities of the case" exception under Bankruptcy Code section 552(b) not apply to such parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral, as applicable;

(x)    pursuant to Bankruptcy Rule 4001, holding a final hearing (the "Final Hearing") on the Motion before this Court to consider entry of this Final Order, among other things, (1) authorizing Debtors to borrow from the DIP Lenders a principal amount of up to $80,000,000 in DIP Loans, (2) authorizing the DIP Guarantors to guaranty the DIP Obligations, (3) authorizing the Debtors' use of Prepetition Collateral (including Cash Collateral), (4) effectuating the DIP L/C Facility, (5) granting the adequate protection described in this Final Order, and (6) authorizing the Debtors to execute and deliver the DIP Documents to which they are a party and to perform their respective obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith; and

(xi)    granting related relief.

The interim hearing on the Motion having been held by this Court on July 23, 2020 (the "Interim Hearing"); and upon the record made by the Debtors at the Interim Hearing, including the Motion [Docket No. 16], the *Declaration of Christian M. Mezger, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2] (the "First Day Declaration"), the *Declaration of Neil. A. Augustine in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing The Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens And Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* [Docket No. 40], and the other evidence submitted or adduced and the arguments of counsel made at the Final Hearing held pursuant to Bankruptcy Rule 4001(b)(2) on August 17, 2020; and this Court having entered, after the Interim Hearing, that certain *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 85] (the "Interim Order"); and this Court having heard and resolved or overruled any objections, reservations of rights, or other statements with respect to the relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and the Debtors having provided notice of the Motion as set forth in the Motion, the relief requested

therein, and it appearing that no other or further notice of the Motion need be given; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.      *Petition Date*.  On July 22, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware commencing these Cases.

B.      *Debtors in Possession*.  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.      *Jurisdiction and Venue*.  The Court has jurisdiction over the Motion, these Cases, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue for these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court may enter a final order consistent with Article III of the United States Constitution.

D.      *Committee*.  On August 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

---

[3]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

E.    *Debtors' Stipulations*.  Without prejudice to the rights of parties in interest (other than the Debtors), including the Committee, as set forth in Paragraph 12 herein, and subject to the limitations thereon contained in Paragraphs 20 and 28 herein, the Debtors stipulate and agree that (collectively, Paragraphs E(i) through (v) below are referred to herein as the "Debtors' Stipulations"):

(i)    First Lien Loans.

(a)    Under that certain loan agreement dated as of January 6, 2017, by and among Global Eagle Entertainment Inc. (the "Borrower"), certain of the Debtors (the "Guarantors"), the letter of credit issuers, and the lenders party thereto (collectively, the "Prepetition First Lien Lenders"), and Citibank, N.A., as administrative agent (in such capacity, the "Prepetition First Lien Administrative Agent", and together with the Prepetition First Lien Lenders, the "Prepetition First Lien Secured Parties") (such credit agreement, as amended, restated, or otherwise modified from time to time, including by that certain First Amendment and Limited Waiver to Credit Agreement, dated as of May 4, 2017, the Amendment to First Amendment and Limited Waiver to Credit Agreement and Second Amendment to Credit Agreement, dated as of June 29, 2017, the Third Amendment to Limited Waiver to Credit Agreement and Third Amendment to Credit Agreement, dated as of October 2, 2017, the Fourth Amendment to Limited Waiver to Credit Agreement and Fourth Amendment to Credit Agreement, dated as of October 31, 2017, the Fifth Amendment to Limited Waiver to Credit Agreement and Fifth Amendment to Credit Agreement, dated as of December 22, 2017, the Sixth Amendment to Credit Agreement, dated as of March 8, 2018, and the Omnibus Incremental Term Loan and Seventh Amendment to Credit Agreement and Amendment to Security Agreement, dated as of July 19, 2019, the Eighth Amendment to Credit Agreement, dated as of April 7, 2020, the Ninth

Amendment to Credit Agreement, dated as of April 9, 2020, the Tenth Amendment to Credit Agreement, dated as of April 15, 2020, and the Eleventh Amendment to Credit Agreement, dated as of July 9, 2020, the "Prepetition Credit Agreement", and together with the other "Loan Documents" (as defined in the Prepetition Credit Agreement, the "Prepetition First Lien Loan Documents"), the Prepetition First Lien Lenders provided loans thereunder (the "First Lien Loans") in a total aggregate principal amount outstanding as of the Petition Date of $584,400,000, and letters of credit have been issued thereunder in an aggregate face amount outstanding as of the Petition Date of $3,900,000 pursuant to a letter of credit sub-facility under the Prepetition Credit Agreement (the "Prepetition L/Cs").[4]

(b)        As of the Petition Date, the Debtors were jointly and severally indebted to the Prepetition First Lien Secured Parties pursuant to the Prepetition First Lien Loan Documents, without defense, counterclaim, or offset of any kind, in an amount equal to the aggregate principal amount of the First Lien Loans *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition Credit Agreement) owing under or in connection with the Prepetition First Lien Loan Documents (collectively, the "Prepetition First Lien Obligations").

(ii)        *First Lien Loan Collateral*.  In connection with the Prepetition Credit Agreement, the Debtors entered into that certain Security Agreement, dated as of January 6, 2017 (as amended, supplemented or otherwise modified from time to time, including by the Omnibus

---

[4]    Amount of funded debt is calculated as of June 30, 2020.

Incremental Term Loan and Seventh Amendment to Credit Agreement and Amendment to Security Agreement, the "Security Agreement"), by and between the Borrower, the other loan parties thereto, and the Prepetition First Lien Administrative Agent.  Pursuant to the Security Agreement and the other Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations are secured by valid, binding, perfected, and enforceable first-priority security interests in and liens (the "First Lien Loan Liens") on the "Collateral" (the "Prepetition Collateral"), pursuant to, and as such term is defined in, the Security Agreement, consisting of substantially all of the Debtors' assets, except as set forth in the Security Agreement.

(iii)    *Second Lien Notes*. Under that certain Securities Purchase Agreement, among Borrower and the purchasers (the "Purchasers") identified on schedule I thereto, and Cortland Capital Market Services LLC, as collateral agent (the "Prepetition Second Lien Administrative Agent," and together with the Purchasers, the "Prepetition Second Lien Secured Parties" and together with the Prepetition First Lien Secured Parties, the "Prepetition Secured Parties"), dated as of March 8, 2018 (as amended, restated, or otherwise modified from time to time, including by that certain First Amendment to Securities Purchase Agreement, dated as of March 27, 2018, that certain Second Amendment to Securities Purchase Agreement and Amendment to Security Agreement, dated as of July 19, 2019, and that certain Third Amendment to Securities Purchase Agreement, dated as of April 15, 2020, the "Securities Purchase Agreement") the Purchasers hold second lien notes in an aggregate principal amount of $188,700,000.

(iv)    *Second Lien Collateral*. In connection with the Securities Purchase Agreement, the Debtors and the Prepetition Second Lien Administrative Agent entered into that certain Security Agreement, dated as of March 27, 2018 (as amended, supplemented or otherwise

modified from time to time, including by the Second Amendment to Securities Purchase Agreement and Amendment to Security Agreement, the "Second Lien Security Agreement"). Pursuant to the Second Lien Security Agreement, the Prepetition Second Lien Secured Parties were granted security interests in and liens (the "Second Lien Loan Liens" and, together with the First Lien Loan Liens, the "Prepetition Liens") on the Prepetition Collateral.

(v)     *Priority of Prepetition Liens; Intercreditor Agreements*.  The Prepetition First Lien Administrative Agent and the Prepetition Second Lien Administrative Agent are parties to that certain Intercreditor and Subordination Agreement, dated as of March 27, 2018 (as amended, restated, or otherwise modified from time to time, including by that certain Amendment No. 1 to Intercreditor and Subordination Agreement and Consent and Reaffirmation, dated as of July 19, 2019, the "Intercreditor Agreement") to govern, among other things, the respective rights, interests, obligations, priority, and positions of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties with respect to the assets and properties of the Debtors and other obligors.  Each of the Borrower and Guarantors acknowledged and agreed to the Intercreditor Agreement.

(vi)     *Cash Collateral*.  Any and all of the Debtors' cash, including the Debtors' cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral existing as of the Petition Date, and the proceeds of any of the foregoing is the Prepetition First Lien Secured Parties' cash collateral within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral").

(vii)     *Bank Accounts*.  The Debtors acknowledge and agree that as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than

the accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system (the "Cash Management Order").

(viii)    *Validity, Perfection, and Priority of First Lien Loan Liens and Prepetition First Lien Obligations*.  Subject to the Challenge Period (as defined herein), each of the Debtors acknowledges and agrees that, in each case as of the Petition Date:  (A) the First Lien Loan Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (B) the First Lien Loan Liens are subject and subordinate only to Prior Senior Liens; (C) the Prepetition First Lien Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (D) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the First Lien Loan Liens or Prepetition First Lien Obligations exist, and no portion of the First Lien Loan Liens or Prepetition First Lien Obligations is subject to any challenge or defense including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (E) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition First Lien Administrative Agent, the Prepetition First Lien Secured Parties, or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers,

directors, and employees arising out of, based upon, or related to their loans under the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations, or the First Lien Loan Liens.

(ix)    *Intercreditor Agreement*.   Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition First Lien Loan Documents or any of the Second Lien Note Documents (as defined in the Intercreditor Agreement) shall (i) remain in full force and effect, (ii) continue to govern the relative obligations, priorities, rights and remedies of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties, and (iii) not be deemed to be amended, altered or modified by the terms of this Final Order or the DIP Documents, in each case, unless expressly set forth herein or therein.

F.    *Findings Regarding the DIP Facility, DIP L/C Facility and Use of Cash Collateral*.

(i)    The Debtors have an immediate need to obtain the DIP Facility and the DIP L/C Facility and to use Cash Collateral (solely to the extent consistent with the Approved DIP Budget (subject to permitted variances as set forth in this Final Order and the DIP Documents)) to, among other things, (A) permit the orderly continuation of their businesses; (B) pay certain Adequate Protection Payments; and (C) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors.  The Debtors represent that the proceeds of the DIP Facility will provide the Debtors with the ability to fund day-to-day operations, meet administrative obligations during the Cases and preserve the value of their estates. The Company believes that the DIP Facility will also reassure the Company's customers and employees that the Company will have access to additional liquidity to meet its commitments during the Cases.  The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial

accommodations is vital to the preservation and maintenance of the Debtors' going concern values and successful reorganization. The Debtors will not have sufficient sources of working capital and financing to operate their businesses in the ordinary course of business throughout the Cases without access to the DIP Facility and the DIP L/C Facility and authorized use of Cash Collateral.

(ii)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents or the L/C Issuer under the DIP L/C Documents (as defined below) and are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtors granting to the DIP Secured Parties, subject to the Carve Out as provided for herein, the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below), and the DIP L/C Superpriority Claims (as defined below) under the terms and conditions set forth in this Final Order and the DIP Documents.

(iii)     The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Documents and all other obligations under the DIP Documents (collectively, the "DIP Obligations") and the DIP L/C Documents shall be deemed to have been extended by the DIP Secured Parties and the issuer under the DIP L/C Agreement in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP

Superpriority Claims, and the obligations under the DIP L/C Documents shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Final Order or any provision hereof is reversed or modified on appeal, and any liens or claims granted to, or payments made to, or payments made to, the DIP Agent or the DIP Lenders hereunder arising prior to the effective date of any such reversal or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(iv)     *Adequate Protection*. Each of the Prepetition First Lien Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, for any diminution in the value thereof.

(v)     *Sections 506(c) and 552(b)*.  In light of the Prepetition First Lien Secured Parties' agreement to subordinate their liens and superpriority claims to the DIP Obligations and the Carve Out and to permit the use of their Cash Collateral as set forth herein, the Prepetition First Lien Secured Parties are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and (i) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

(vi)     *Consent by Prepetition First Lien Administrative Agent*.  The Prepetition First Lien Administrative Agent (at the direction of the Required Lenders (as defined in the Prepetition Credit Agreement)), on behalf and for the benefit of each of the Prepetition First Lien Secured Parties, has consented to, conditioned on the entry of this Final Order, the Debtors' incurrence of the DIP Facility, the incurrence of the DIP L/C Facility, and the proposed use of Cash Collateral on the terms and conditions set forth in this Final Order, and the terms of the

adequate protection provided for in this Final Order, including that the Adequate Protection Liens and Adequate Protection Superpriority Claim are subject and subordinate to the Carve Out.

G. _Good Cause Shown; Best Interest_.  Good cause has been shown for entry of this Final Order, and entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization. Absent granting the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed.

H. _Notice_.  In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and the Local Rules, notice of the Final Hearing has been provided by the Debtors.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested herein, and of the Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and applicable Local Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. DIP Financing Approved.  The Motion is granted on a final basis as set forth herein, and the use of Cash Collateral on a final basis is authorized, subject to the terms of this Final Order.

2. Objections Overruled.  Any objections, reservations of rights, or other statements with respect to entry of this Final Order, to the extent not withdrawn or resolved, are overruled on the merits.  This Final Order shall become effective immediately upon its entry.

26919129.1

3.    <u>Authorization of the DIP Facility, the DIP Documents, and the DIP L/C Facility</u>.

(a)    The Debtors are hereby immediately authorized and empowered to enter into, and execute and deliver, the DIP Documents, and such additional documents, instruments, certificates and agreements as may be reasonably required or requested by the DIP Secured Parties to implement the terms or effectuate the purposes of this Final Order and the DIP Documents, including the incurrence of the DIP L/C Facility.  To the extent not entered into as of the date hereof, the Debtors and the DIP Secured Parties shall negotiate the DIP Documents in good faith, and in all respects such DIP Documents shall be consistent with the terms of the DIP Credit Agreement and otherwise acceptable to the DIP Agent and the Required DIP Lenders.  Upon entry of this Final Order, the Final Order, the DIP Credit Agreement, and other DIP Documents shall govern and control the DIP Facility.  The DIP Agent is hereby authorized to execute and enter into its respective obligations under the DIP Facility Documents, subject to the terms and conditions set forth therein and this Final Order.  Upon execution and delivery thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms.  To the extent there exists any conflict among the terms and conditions of the DIP Documents and this Final Order, the terms and conditions of this Final Order shall govern and control.  In all respects, the DIP Documents will be consistent with this Final Order and the DIP Credit Agreement.

(b)    Upon entry of this Final Order, the DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to guaranty, borrowings up to an aggregate principal amount of $80,000,000 of DIP Loans, subject to and in accordance with this Final Order, without any further action by the Debtors or any other party, inclusive of any amounts drawn pursuant to the Interim Order.

(c)     Pursuant to the Interim Order, the DIP Borrower has entered into an up to $10 million (the "DIP L/C Facility Limit") letter of credit facility (the "DIP L/C Facility") with the DIP Agent or one its affiliates, which provides for the issuance of letters of credit, and which DIP L/C Facility is documented pursuant to a Letter of Credit Agreement, dated as of August 5, 2020 (the "DIP L/C Agreement" and together with any pledge agreement or other security documents delivered in connection therewith, the "DIP L/C Documents"), which DIP L/C Agreement provides for letter of credit fees consistent with those applicable to the Prepetition L/Cs under the Prepetition Credit Agreement, as provided in the DIP L/C Documents.  The Debtors are authorized to comply with, and perform their obligations under, the DIP L/C Documents and the DIP L/C Documents shall be enforceable against each of the Debtors in accordance with their terms.  The Debtors are authorized to obtain postpetition letters of credit under the DIP L/C Facility (the "Postpetition L/Cs") up to an amount equal to the DIP L/C Facility Limit less the aggregate face amount of then issued and outstanding Prepetition L/Cs, which Postpetition L/Cs will be cash collateralized (the "DIP L/C Cash Collateral") on the terms set forth in the DIP L/C Agreement and the other DIP L/C Documents with proceeds of the DIP Loans and granted superpriority administrative claim status equivalent to and *pari passu* with the DIP Superpriority Claims (the "DIP L/C Superpriority Claims").  Pursuant to the Interim Order, the Debtors' reimbursement obligations in connection with the Prepetition L/Cs were granted allowed DIP L/C Superpriority Claim status, subject to the Carve Out, but such obligations shall not be cash collateralized.  For the avoidance of doubt, the only collateral for the Postpetition L/Cs issued pursuant to the DIP L/C Facility shall be DIP L/C Cash Collateral and the only claims against the Debtors in respect of reimbursement of obligations in connection with the Prepetition L/Cs shall be the DIP L/C Superpriority Claims as set forth herein and in the DIP L/C Documents; provided, however, the

DIP L/C Cash Collateral shall not be used to fund the Carve Out, solely to the extent the applicable Postpetition L/Cs secured by such DIP L/C Cash Collateral remains outstanding; provided, further, that, in the event any Postpetition L/C expires or is cancelled, any DIP L/C Cash Collateral that previously cash collateralized such Postpetition L/C shall be returned to an account under the control of the DIP Agent for the benefit of the DIP Lenders.

(d)     In accordance with the terms of this Final Order and the DIP Documents, proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Documents and this Final Order, and in accordance with the Approved DIP Budget, subject to permitted variances as set forth in this Final Order and the DIP Documents.  Attached as **Exhibit B** to the Interim Order and incorporated herein by reference is a budget prepared by the Debtors and approved by the Required DIP Lenders in accordance with Section 6.24 of the DIP Credit Agreement (the "Approved DIP Budget").

(e)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby, or the DIP Credit Agreement), and to pay all fees (including all amounts owed to the DIP Lenders and the DIP Agent under the DIP Documents) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(1)     the execution, delivery, and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby;

(2)     the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents (in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the DIP Agent, and the Required DIP Lenders may agree and upon three (3) business days' notice to the advisors to the Committee (the "Committee Advisors"), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Documents or the DIP Obligations that do not shorten the maturity of the extensions of credit thereunder or modify the commitments or the rate of interest or other amounts payable thereunder;

(3)     the non-refundable payment to each of and/or on behalf of the DIP Secured Parties, as applicable, of the fees referred to in the DIP Documents, including (x) all fees and other amounts owed to the DIP Agent and the DIP Lenders and (y) all reasonable and documented costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Documents and this Final Order (whether incurred before or after the Petition Date, including, for the avoidance of doubt, (a) Gibson, Dunn & Crutcher LLP (as counsel), Rothschild & Co. US Inc. (as financial advisor), and Pachulski, Stang, Ziehl & Jones LLP (as local bankruptcy counsel) (collectively, the "DIP/First Lien Advisors") to the DIP Lenders and the ad hoc group of the Prepetition

First Lien Lenders (the "<u>DIP/First Lien Group</u>"); and (b) Weil, Gotshal & Manges LLP (as counsel), and Troutman Pepper Hamilton Sanders LLP (as local bankruptcy counsel) as counsel to the Prepetition First Lien Administrative Agent, DIP Agent, and issuer under the DIP L/C Agreement (collectively, the "<u>Agent Advisors</u>") and, to the extent necessary to exercise its rights and fulfill its obligations under the DIP Documents, one counsel to the DIP Agent in each local jurisdiction, which such fees and expenses shall not be subject to the approval of the Court, nor shall any recipient of any such payment be required to file with respect thereto any interim or final fee application with the Court, provided that any fees and expenses of a professional shall be subject to the provisions of Paragraph 19 of this Final Order; and

(4)    the performance of all other acts required under or in connection with the DIP Documents.

(f)    Upon entry of this Final Order, such DIP Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Cases, any subsequently converted Case of any Debtor to a case under chapter 7 of the Bankruptcy Code or after the dismissal of any Case. No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Documents, or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.  All payments or proceeds remitted (a) to or on behalf of the DIP Agent on behalf of any DIP Secured Parties or (b) to or on behalf of the Prepetition First Lien Secured Parties, in each case, pursuant to the DIP Documents, the provisions of this Final Order, or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

(g)    The DIP Guarantors hereby are authorized and directed to jointly, severally, and unconditionally guarantee, and upon entry of this Final Order shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.

4.    <u>Budget and Variance Reporting</u>.  On the final business day of every fourth calendar week following entry of the Interim Order beginning with the fourth full week following the Petition Date (or more frequently if determined by the Debtors), the Debtors will deliver to the Prepetition First Lien Administrative Agent, the Agent Advisors, the DIP/First Lien Advisors, and the Committee Advisors an updated Budget for the subsequent 13-week period, which shall be in form and substance satisfactory to the Required DIP Lenders.  The initial Approved DIP Budget or any subsequent Approved DIP Budget shall be deemed to constitute the "Approved DIP Budget" for purposes of this Final Order with the most recently delivered Budget constituting the "Approved DIP Budget," upon (i) approval by the Required DIP Lenders (which must be in writing, email being sufficient) or (ii) 5:00 p.m. (prevailing Eastern time) three (3) business days following delivery of such Budget if the Required DIP Lenders have neither approved nor rejected

the Budget.  The Debtors will deliver to the Prepetition First Lien Administrative Agent, the Agent

Advisors, the DIP/First Lien Advisors, and the Committee Advisors an updated Budget for the

subsequent 13-week period on the final business day of every fourth calendar week following entry

of the Interim Order beginning with the fourth full week following the Petition Date.  In the event

the conditions for the most recently delivered Budget to constitute an "Approved DIP Budget" are

not met as set forth herein, the prior Approved DIP Budget shall remain in full force and effect.

Commencing on the first full calendar week after the Petition Date, on or before 5:00 p.m.

(prevailing Eastern time) on Thursday of each week, the Debtors shall deliver to the DIP Agent

and the DIP/First Lien Advisors and the Committee Advisors a budget variance

report/reconciliation (the "Approved DIP Budget Variance Report"), setting forth in reasonable

detail actual operating receipts and operating disbursements on a rolling four-week basis (the

"Budget Period")[5] and all Budget Variances (as defined below), in each case, on both an individual

line item basis and an aggregate basis, as compared to the projected amounts therefor set forth in

the then applicable Approved DIP Budget, together with a statement confirming compliance with

the budget covenants set forth in Section 6.24 of the DIP Credit Agreement.  The Approved DIP

Budget Variance Report shall include indications as to whether each variance therein is temporary

or permanent and an explanation, in reasonable detail, of any material variance.  The Debtors shall

not permit the percentage variance with respect to (i) total projected disbursements in each then-

current Approved DIP Budget to exceed 115% on an aggregate basis of total actual operating

---

[5]    Notwithstanding anything to the contrary herein, with respect to the Budget Period for the initial Approved DIP
Budget, the Approved DIP Budget Variance Report delivered August 6, 2020 will include actual operating
receipts and operating disbursements for the four-week period ending July 31 (including weeks falling prior to
the Petition Date) and each subsequent Approved DIP Budget Variance Report delivered for succeeding weeks
will be determined in a similar manner on a rolling four-week basis, through the end of the week prior to the
delivery of such Approved DIP Budget Variance Report.

disbursements, and (ii) total projected receipts in each then-current Approved DIP Budget to be less than 85% on an aggregate basis of total actual operating receipts, in each case, for measuring the variance, beginning with the week ending July 31, 2020, which would be reported by the Approved DIP Budget Variance Report delivered August 6, 2020, tested weekly on a four week rolling basis, in each case, for the Budget Period under the then-current Approved DIP Budget (the "Budget Variances"; all references in this Final Order and the DIP Documents to "Approved DIP Budget" shall mean the Approved DIP Budget as it is subject to the Budget Variances).  For the avoidance of doubt, for purposes of Budget Variances testing, the fees and expenses of Professional Persons (as defined herein), the Agent Advisors, and the DIP/First Lien Advisors shall be excluded.

   5. Access to Records.  The Debtors shall provide the DIP/First Lien Advisors and the Committee Advisors with all reporting and other information required to be provided to the DIP Agent under the DIP Documents.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Documents, upon reasonable notice to Debtors' counsel (email being sufficient), at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Secured Parties to have reasonable access to (i) inspect the Debtors' assets, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the DIP Secured Parties shall be provided with access to all information they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

26919129.1

6.      DIP Superpriority Claims.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (the "DIP Superpriority Claims") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "Avoidance Actions"), subject only to, and subordinated in all respects to, the payment of the Carve Out; provided, however, the DIP L/C Superpriority Claim shall be *pari passu* with the DIP Superpriority Claims and treated as DIP Superpriority Claims pursuant to the terms of this Final Order and the DIP Documents.  Except as set forth in this Final Order, no other superpriority claims shall be granted or allowed in these Cases.

7.      DIP Liens.  As security for the DIP Obligations, effective and perfected upon the date of this Final Order, and without the necessity of the execution, recordation of filings by the

Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Secured Parties (all property identified in clause (a) and (b) below being collectively referred to as the "DIP Collateral"), subject to (x) Liens permitted pursuant to the terms of the DIP Credit Agreement and (y) the Carve Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Documents, the "DIP Liens"):

(a)    First Priority Lien On Any Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) (subject to the Carve Out), including, without limitation (in each case, to the extent not subject to valid, perfected, and non-avoidable liens), a 100% equity pledge of any first-tier foreign subsidiaries; unencumbered cash of the Debtors (whether maintained with the DIP Agent or otherwise) and any investment of such cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property,

letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests in or of any entity (including equity interests in subsidiaries of each Debtor), money, investment property, intercompany claims, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred on or following the Petition Date, causes of action, including causes of action arising under section 549 of the Bankruptcy Code (but excluding all other Avoidance Actions), all products and proceeds of the foregoing and all proceeds and property recovered in respect of Avoidance Actions (the "Avoidance Action Proceeds") (collectively, the "Previously Unencumbered Property"); provided, however, that before seeking repayment of the DIP Obligations from Avoidance Action Proceeds, the DIP Agent (as directed by the DIP Lenders in their sole discretion) must first seek to satisfy the DIP Obligations from all other DIP Collateral, and such Avoidance Action Proceeds shall be preserved during the pendency of such efforts to satisfy the DIP Obligations from the DIP Collateral other than Avoidance Action Proceeds.

(b)    Liens Priming the Prepetition Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all property of the Debtors that was subject to the Prepetition Liens (subject to the Carve Out), including, without limitation, the Prepetition Collateral and Cash Collateral; provided that such liens shall be immediately junior to any Prior Senior Liens; provided, further, that, for the avoidance of doubt and notwithstanding anything to the contrary contained herein, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to this Final Order shall attach to the Debtors' economic rights, including, without limitation, any and all proceeds of the foregoing.

(c)      <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and post-petition property of the Debtors immediately junior to the Prior Senior Liens.

8.      <u>Adequate Protection for the Prepetition First Lien Secured Parties</u>.  Subject only to the Carve Out and the terms of this Final Order, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), solely for and equal in amount to the postpetition diminution in value of such interests (each such diminution, a "<u>Diminution in Value</u>"), resulting from the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve Out, the Debtors' use of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, the Prepetition First Lien Administrative Agent, for the benefit of itself and the other Prepetition First Lien Secured Parties, is hereby granted the following (collectively, the "<u>First Lien Adequate Protection Obligations</u>"):

(a)      <u>First Lien Adequate Protection Liens</u>.  As security for and solely to the extent of any Diminution in Value, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the date of this Final Order (together, the "<u>First Lien Adequate Protection Liens</u>"), without the necessity of the execution by the Debtors (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral; <u>provided</u>, <u>however</u>, that before seeking repayment of the First Lien Adequate Protection Obligations from Avoidance Action Proceeds, the Prepetition First Lien Secured Parties must first seek to satisfy the First Lien Adequate Protection Obligations from

all other DIP Collateral, and such Avoidance Action Proceeds shall be preserved during the

pendency of such efforts to satisfy the First Lien Adequate Protection Obligations from the DIP

Collateral other than Avoidance Action Proceeds.  Subject to the terms of this Final Order, the

First Lien Adequate Protection Liens shall be subordinate only to the (A) Carve Out, (B) the DIP

Liens, and (C) Prior Senior Liens.  The First Lien Adequate Protection Liens shall otherwise be

senior to all other security interests in, liens on, or claims against any of the DIP Collateral

(including, for the avoidance of doubt, any lien or security interest that is avoided and preserved

for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code);

        (b)        _Adequate Protection Superpriority Claims_.  As further adequate protection,

and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, allowed

administrative expense claims in each of the Cases ahead of and senior to any and all other

administrative expense claims in such Cases to the extent of any postpetition Diminution in Value

(the "_Adequate Protection Superpriority Claims_"), but junior to the Carve Out and the DIP

Superpriority Claims.  Subject to the Carve Out and the DIP Superpriority Claims and DIP L/C

Superpriority Claims in all respects, the Adequate Protection Superpriority Claims will not be

junior to any claims and shall have priority over all administrative expense claims against each of

the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without

limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections

105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(d), 726, 1113 and 1114

of the Bankruptcy Code.  The Prepetition First Lien Secured Parties shall not receive or retain any

payments, property or other amounts in respect of the Adequate Protection Superpriority Claims

under section 507(b) of the Bankruptcy Code granted hereunder unless and until the DIP

Obligations have been indefeasibly paid in full, in cash, or satisfied in a manner otherwise agreed to by the Required DIP Lenders, in each case as provided in the DIP Documents.

(c)    <u>First Lien Adequate Protection Payments</u>.  As further adequate protection, the Debtors are authorized and directed to pay, in accordance with the terms of Paragraph 19 of this Final Order, all reasonable and documented fees and expenses (the "<u>Adequate Protection Fees</u>"), whether incurred before or after the Petition Date, to the extent not duplicative of any fees and/or expenses paid pursuant to paragraph 3(e)(3) hereof, including all reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Documents and this Final Order, including, for the avoidance of doubt, of (i) the Agent Advisors, as counsel to the DIP Agent and Prepetition First Lien Administrative Agent, (ii)  the DIP/First Lien Group Advisors, and (iii) to the extent necessary to exercise and fulfill its obligations under the Prepetition First Lien Loan Documents, one counsel to the Prepetition First Lien Secured Parties (taken as a whole) in each local jurisdiction that is material to the Prepetition First Lien Secured Parties (taken as a whole) (all payments referenced in this sentence, collectively, the "<u>Adequate Protection Payments</u>").  None of the Adequate Protection Fees shall be subject to separate approval by this Court or the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(d)    <u>Right to Seek Additional Adequate Protection</u>.  This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition First Lien Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

9.      <u>Adequate Protection for the Prepetition Second Lien Secured Parties</u>.  Pursuant to the terms of this Final Order and sections 361, 363(e), and 364 of the Bankruptcy Code, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), solely for and equal in amount to the postpetition Diminution in Value, resulting from the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve Out, the Debtors' use of the Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, the Prepetition Second Lien Administrative Agent, for the benefit of itself and the other Prepetition Second Lien Secured Parties, is hereby granted the following (collectively, the "<u>Second Lien Adequate Protection Obligations</u>" and, together with the First Lien Adequate Protection Obligations, the "<u>Adequate Protection Obligations</u>"):

(a)      <u>Second Lien Adequate Protection Liens</u>.  As security for and solely to the extent of any Diminution in Value, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the date of this Final Order (together, the "<u>Second Lien Adequate Protection Liens</u>" and, together with the First Lien Adequate Protection Liens, the "<u>Adequate Protection Liens</u>"), without the necessity of the execution by the Debtors (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral; <u>provided</u>, <u>however</u>, that before seeking repayment of the Second Lien Adequate Protection Obligations from Avoidance Action Proceeds, the Prepetition Second Lien Secured Parties must first seek to satisfy the Second Lien Adequate Protection Obligations from all other DIP Collateral, and such Avoidance Action Proceeds shall be preserved during the pendency of such efforts to satisfy the Second Lien Adequate Protection Obligations from the DIP Collateral other than Avoidance Action Proceeds.  Subject to the terms of this Final

Order, the Second Lien Adequate Protection Liens shall be subordinate only to the (A) Carve Out, (B) the DIP Liens, (C) the First Lien Adequate Protection Liens, (D) the First Lien Loan Liens, and (E) Prior Senior Liens.  The Second Lien Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code).

       10.    Carve Out.

       (a)    <u>Priority of Carve Out</u>.  Subject to the terms and conditions contained in this Paragraph 10, each of the DIP Liens, DIP Superpriority Claims, DIP Superpriority L/C Claims, Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out; provided, however, that the DIP L/C Cash Collateral shall not be used to fund the Carve Out, solely to the extent the applicable Postpetition L/Cs secured by such DIP L/C Cash Collateral remains outstanding.  The Carve Out shall have such priority claims and liens over all assets of the Debtors, including any DIP Collateral, Prepetition Collateral, and any funds in the escrow account into which the DIP Loans are funded (the "<u>DIP Loan Escrow</u>").

       (b)    <u>Definition of Carve Out</u>.  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all fees and expenses (including any success or transaction or

completion fees owed to Greenhill & Co., LLC ("Greenhill") or Perella Weinberg Partners LP ("PWP"), to the extent payable pursuant to an order entered by the Court approving Greenhill's and PWP's retentions in the Cases, as applicable) (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent (at the direction of the Required DIP Lenders) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, (the amounts set forth in clauses (i) through (iii), the "Pre-Carve Out Trigger Notice Cap"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3,500,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice (such date, the "Trigger Date"), to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount of any prepetition retainers received by any such Professional Persons and not previously returned or applied to fees and expenses (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap" and, together with the Pre-Carve Out Trigger Notice Cap, the "Carve Out Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel (Latham & Watkins LLP), the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in the DIP Credit Agreement) and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.  Notwithstanding anything in this Final Order or

the DIP Documents to the contrary, in no event shall the Carve Out apply to the DIP L/C Cash Collateral, solely to the extent the applicable Postpetition L/Cs secured by such DIP L/C Cash Collateral remains outstanding.

(c)     Carve Out Reserve.  Notwithstanding the occurrence of an Event of Default or conditions to borrowing or release of funds from the DIP Loan Escrow, on the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for DIP Loans under the DIP Facility (on a pro rata basis based on the then outstanding DIP Obligations) and/or request to release funds from the DIP Loan Escrow, in an amount equal to the then unpaid amounts of the Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date (any such amounts actually advanced shall constitute DIP Loans and shall be deposited in the DIP Loan Escrow), and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor or available in the DIP Loan Escrow to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for DIP Loans under the DIP Facility (on a pro rata basis based on the then outstanding DIP Obligations) and/or request to release funds from the

DIP Loan Escrow in an amount equal to the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor or available in the DIP Loan Escrow, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap . The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.   On the first business day after the DIP Agent gives such notice to such DIP Lenders, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facility, any termination of the DIP Obligations following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), each DIP Lender with an outstanding Commitment (as defined in the DIP Credit Agreement, on a pro rata basis based on the then outstanding Commitments) shall make available to the DIP Agent such DIP Lender's pro rata share with respect to such borrowing in accordance with the DIP Facility.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Pre-Carve Out Trigger Notice Cap (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition

First Lien Secured Parties in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition First Lien Secured Parties in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the DIP Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this Paragraph 10, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserves, up to the applicable amount set forth in this Paragraph 10, prior to making any payments to the DIP Agent or the Prepetition First Lien Secured Parties, as applicable.  Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition First Lien Administrative Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way

shall the Approved DIP Budget, Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve

Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the

Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and

notwithstanding anything to the contrary in this Final Order, (i) the DIP Facility, the Prepetition

First Lien Documents or the Second Lien Note Documents (as defined in the Intercreditor

Agreement), the Carve Out shall be senior to all liens and claims securing the DIP Facility, the

Adequate Protection Liens, the Adequate Protection Superiority Claims, any claims arising under

section 507(b) of the Bankruptcy Code, and any and all other forms of adequate protection, liens,

or claims securing the DIP Obligations, the Prepetition First Lien Obligations, and the obligations

pursuant to the Securities Purchase Agreement and (ii) whether an amount equal to the Post-Carve

Out Trigger Notice Reserve must be included in the wind-down budget for the Debtors' wind-

down of their estates upon the closing of a sale or sales of all or substantially all of the Debtors'

assets under section 363 of the Bankruptcy Code shall be determined in connection with any

hearing at which the Debtors seek approval of any such sale, and all respective rights of parties in

interest with respect thereto are reserved.

   (d) <u>Payment of Allowed Professional Fees Prior to the Termination Declaration</u>

<u>Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration

Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

   (e) <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  Except for

funding the Carve Out Reserves as provided herein, none of the DIP Agent, DIP Lenders, or the

Prepetition First Lien Secured Parties shall be responsible for the payment or reimbursement of

any fees or disbursements of any Professional Person incurred in connection with the Cases or any

successor cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or

otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Documents, the Bankruptcy Code, and applicable law.

11.     Reservation of Rights of the DIP Agent, DIP Lenders, and Prepetition First Lien Secured Parties.  Subject in all cases to the Carve Out, notwithstanding any other provision in this Final Order or the DIP Documents to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair:  (a) any of the rights of any of the Prepetition First Lien Secured Parties to seek any other or supplemental relief in respect of the Debtors including the right to seek additional adequate protection at and following the Final Hearing; *provided* that any such further or different adequate protection shall at all times be subordinate and junior to the Carve Out and the claims and liens of the DIP Secured Parties granted under this Final Order and the DIP Documents; (b) any of the rights of the DIP Secured Parties or the Prepetition First Lien Secured Parties under the DIP Documents, the Prepetition First Lien Loan Documents, the Intercreditor Agreement, or the Bankruptcy Code or under non-bankruptcy law (as applicable), including, without limitation, the right of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties to (i) request modification of the automatic

stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases, conversion

of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner

with expanded powers in any of the Cases, (iii) seek to propose, subject to the provisions of section

1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or

privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties or the

Prepetition First Lien Secured Parties.  The delay in or failure of the DIP Secured Parties and/or

the Prepetition First Lien Secured Parties to seek relief or otherwise exercise their rights and

remedies shall not constitute a waiver of any of the DIP Secured Parties' or the Prepetition First

Lien Secured Parties' rights and remedies.

      12.    <u>Reservation of Certain Committee and Third Party Rights and Bar of Challenges</u>

<u>and Claims</u>.  Subject to the Challenge Period (as defined herein), the stipulations, admissions,

waivers, and releases contained in this Final Order, including the Debtors' Stipulations, shall be

binding upon the Debtors, their estates, and any of their respective successors in all circumstances

and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all

Challenges (as defined below) as of the Petition Date.  The stipulations, admissions, and waivers

contained in this Final Order, including, the Debtors' Stipulations, shall be binding upon all other

parties in interest, including the Committee and any other person acting on behalf of the Debtors'

estates, unless and to the extent that a party in interest with proper standing granted by order of the

Court (or other court of competent jurisdiction) has timely and properly filed an adversary

proceeding or contested matter under the Bankruptcy Rules (i) before the earlier of (a) except as

to the Committee, seventy-five (75) calendar days after entry of the Interim Order, and (b) in the

case of any such adversary proceeding or contested matter filed by the Committee, sixty (60)

calendar days after the appointment of such Committee, subject to further extension by written

agreement of the Debtors and the Prepetition First Lien Administrative Agent (acting at the direction of the Required Lenders (as defined in the Prepetition Credit Agreement)) or as ordered by the Court for cause shown after notice and hearing (in each case, a "Challenge Period" and the date of expiration of each Challenge Period being a "Challenge Period Termination Date"); *provided, however*, that if, prior to the end of the Challenge Period, (x) the cases convert to chapter 7, or (y) if a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended by the later of (A) the time remaining under the Challenge Period plus ten (10) days or (B) such other time as ordered by the Court solely with respect to any such trustee, commencing on the occurrence of either of the events discussed in the foregoing clauses (x) and (y); (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding: (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition First Lien Administrative Agent and the Prepetition First Lien Secured Parties; or (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition First Lien Obligations (any such claim, a "Challenge"), and (iii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.  The timely filing of a motion (x) seeking to extend the Challenge Period for cause shown by the Committee (an "Extension Motion") or (y) seeking standing to file a Challenge before the termination of the Challenge Period, which attaches a proposed Challenge, shall toll the Challenge Period Termination Date only as to the party that timely filed such Extension Motion or standing motion until such motion is resolved or adjudicated by the Court; provided, however that the Debtors, the Prepetition First Lien Secured Parties, and the Committee hereby agree that the Committee shall seek a hearing on any Extension Motion on an expedited basis.  Upon the expiration of the Challenge Period Termination Date without the filing of a

Challenge (or if any such Challenge is filed and overruled):  (a) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; (b) the Prepetition First Lien Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Cases and any Successor Cases; (c) the First Lien Loan Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected secured claims, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in this Final Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition First Lien Secured Parties' claims, liens, and interests contained in this Final Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases.  If any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules and remains pending and the Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of the Debtors' estates.  Furthermore, if any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules, the stipulations and admissions contained in this Final Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on the Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date.  Nothing in this Final Order vests

or confers on any person (as defined in the Bankruptcy Code), including, without limitation, the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation any challenges (including a Challenge) with respect to the Prepetition First Lien Loan Documents, the First Lien Loan Liens, and the Prepetition First Lien Obligations, and, to the extent required by applicable law, a separate order of the Court conferring such standing on the Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest.

13.   <u>DIP Termination Date</u>.   On the DIP Termination Date (as defined below), consistent with Section 8.02 of the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable, all Commitments will terminate, and the Carve Out Reserves shall be immediately funded; (b) all authority to use Cash Collateral shall cease; *provided*, *however*, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to fund the Carve Out and pay payroll and other expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved DIP Budget, subject to such variances as permitted in the DIP Credit Agreement; and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this Final Order.

14.   <u>Events of Default</u>.   The occurrence of any of the following events, unless waived by the Required DIP Lenders in accordance with the terms of the DIP Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):  (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order, (b) the failure of the Debtors to comply with any of the Required Milestones (as defined below) or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement;

provided, however, that notwithstanding anything herein or in the DIP Credit Agreement, section 8.01(f)(x) of the DIP Credit Agreement shall be amended and restated in its entirety as follows:

> "the commencement of a suit or an action (but not including a motion for standing to commence a suit or an action) by any Loan Party or any Affiliate thereof against either the DIP Agent or any Lender or the Pre-Petition Agent or any Pre-Petition Lender and the continuation thereof without dismissal for thirty (30) days after service thereof on either the DIP Agent or such Lender or Pre-Petition Agent or any Pre-Petition Lender, that asserts or seeks by or on behalf of a Loan Party, any Affiliate thereof, or any state or federal environmental protection or health and safety agency a claim or any legal or equitable remedy that would (x) have the effect of invalidating, subordinating or challenging any or all of the Obligations or Liens of the DIP Agent or any Lender under the Loan Documents or the Pre-Petition Obligations or Liens of the Pre-Petition Agent or Pre-Petition Lenders under the Pre-Petition Loan Documents to any other claim, or (y) have a material adverse effect on the rights and remedies of the DIP Agent or any Lender or Pre-Petition Agent or any Prior Lender under any Loan Document or the Pre-Petition Agent or Pre-Petition Lenders under the Pre-Petition Loan Documents or the collectability of all or any portion of the Obligations under the Loan Documents or the Pre-Petition Obligations;"

provided, further, however, that notwithstanding anything herein or in the DIP Credit Agreement, section 8.01(f)(ii) of the DIP Credit Agreement shall be amended and restated in its entirety as follows:

> "the filing of any plan of reorganization or plan of liquidation (subject to the last sentence of Section 7.10) or disclosure statement attendant thereto, or any direct or indirect amendment to any such plan or disclosure statement, by a Loan Party that does not propose to indefeasibly repay in full in cash the Obligations under this Agreement, or by any other Person to which the DIP Agent (at the Direction of the Required DIP Lenders) does not consent, or any of the Loan Parties or their Subsidiaries shall seek, support or fail to contest in good faith the filing or confirmation of any such plan or entry of any such order, (B) the entry of any order terminating any Loan Party's exclusive right to file a plan of reorganization or plan of liquidation, or (C) the expiration of any Loan Party's exclusive right to file a plan of reorganization or plan of liquidation."

provided, further, however, that notwithstanding anything herein or in the DIP Credit Agreement, section 8.01(f)(iii) of the DIP Credit Agreement shall be amended and restated in its entirety as follows:

> "the entry of an order in any of the Chapter 11 Cases confirming a plan of reorganization or plan of liquidation (subject to the last sentence of Section 7.10) that is not acceptable to the Required DIP Lenders;"

15.   Milestones.  The Debtors' failure to comply with those certain case milestones set forth in Section 6.25 of the DIP Credit Agreement (collectively, the "Required Milestones") shall constitute an "Event of Default" in accordance with the terms of the DIP Credit Agreement; provided, however, that notwithstanding anything herein or in the DIP Credit Agreement, the words "forty-two (42) days" shall be deleted in section 6.25(e) of the DIP Credit Agreement and replaced with the words "fifty-one (51) days."

16.   Rights and Remedies Upon Event of Default.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, subject to the Remedies Notice Period (defined below), (a) the DIP Agent (at the direction of the Required DIP Lenders) may declare (any such declaration shall be referred to herein as a "Termination Declaration") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the Carve Out shall be triggered, through the delivery of the Carve Out Trigger Notice to the DIP

26919129.1

Borrower and (b) subject to paragraph 13(b), the DIP Agent (at the direction of the Required DIP Lenders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date on which a Termination Declaration is delivered, the "DIP Termination Date").  The Termination Declaration shall not be effective until notice has been provided by electronic mail (or other electronic means) to counsel to the Debtors, counsel to a Committee, and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties is hereby modified so that five (5) business days after the DIP Termination Date (the "Remedies Notice Period"):  (a) the DIP Agent (at the direction of the Required DIP Lenders) shall be entitled to exercise its rights and remedies in accordance with the DIP Documents and this Final Order to satisfy the DIP Obligations, DIP Superpriority Claims, DIP L/C Superpriority Claims and DIP Liens, subject to the Carve Out; (b) subject to the foregoing clause (a), the applicable Prepetition First Lien Secured Parties shall be entitled to exercise their respective rights and remedies to the extent available in accordance with the applicable Prepetition First Lien Loan Documents and this Final Order with respect to the Debtors' use of Cash Collateral.  During the Remedies Notice Period, the Debtors, the Committee, and/or any party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court for the sole purpose (unless the Court orders otherwise) of contesting whether an Event of Default has occurred or is continuing or for the contested use of Cash Collateral.  Except as set forth in this Paragraph 16 or otherwise ordered by the Court prior to the expiration of the Remedies Notice Period, after the Remedies Notice Period, the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured

Parties under this Final Order.  Unless the Court has determined that an Event of Default has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the DIP Agent, DIP Lenders, and Prepetition First Lien Secured Parties (solely with respect to the use of Cash Collateral to the extent permitted hereunder) shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition First Lien Secured Parties shall be permitted to exercise all remedies set forth herein, and in the DIP Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Final Order; *provided*, that the Prepetition First Lien Secured Parties shall be permitted to exercise remedies to the extent available solely with respect to the Debtors' use of Cash Collateral.

17.    <u>Limitation on Charging Expenses Against Collateral</u>.    No expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (a) the DIP Collateral (except to the extent of the Carve Out), the DIP Agent, or the DIP Lenders or (b) the Prepetition Collateral (except to the extent of the Carve Out) or the Prepetition First Lien Secured Parties, in each case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties.

18.    <u>Use of Cash Collateral</u>.    The Debtors are hereby authorized to use all Cash Collateral of the Prepetition First Lien Secured Parties, but solely for the purposes set forth

in this Final Order and in accordance with the Approved DIP Budget (subject to permitted variances as set forth in this Final Order and the DIP Documents), including, without limitation, to make payments on account of the Adequate Protection Obligations provided for in this Final Order, from the date of this Final Order through and including the date of termination of the DIP Credit Agreement.  Except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

19.   <u>Expenses and Indemnification</u>.

(a)   The Debtors are hereby authorized and directed to pay, in accordance with this Final Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, backstop, fronting, closing, arrangement or commitment payments (including all payments and other amounts owed to the DIP Lenders), administrative agent's fees, collateral agent's fees, and escrow agent's fees (including all fees and other amounts owed to the DIP Agent), the reasonable and documented fees and disbursements of counsel and other professionals to the extent set forth in Paragraphs 3(d)(iii) and 8(c) of this Final Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Final Order or the DIP Documents.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Documents) all reasonable and documented fees, costs, and expenses, including the fees and expenses of counsel to the DIP Lenders, the DIP Agent, the Prepetition First Lien Administrative Agent, and the DIP/First Lien Group, incurred on or prior to such date without the need for any professional engaged by the DIP

Lenders, the DIP Agent, the Prepetition First Lien Administrative Agent, or the DIP/First Lien Group to first deliver a copy of its invoice as provided for herein.

(b)    The Debtors shall be jointly and severally obligated to pay all fees and expenses described above, which obligations shall constitute the DIP Obligations.  The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in Paragraphs 3(d)(iii) and 8(c) of this Final Order (collectively, the "Lender Professionals" and, each, a "Lender Professional") no later than ten (10) business days (the "Review Period") after the receipt by counsel for the Debtors, the Committee, or the U.S. Trustee of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date.  Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.  The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, the Committee, or the U.S. Trustee notifies the submitting party in writing setting forth

the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days prior written notice to the submitting party of any hearing on such motion or other pleading).  For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(c)     In addition, the Debtors will indemnify the DIP Lenders, the DIP Agent, and their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each an "Indemnified Person") and hold them harmless from and against all costs, expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility; *provided* that no such person will be indemnified for costs, expenses, or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the gross negligence, fraud, or willful misconduct of such person (or their related persons).  No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's gross negligence, fraud, or willful misconduct or breach of their obligations under the DIP Facility, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

20.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

21.    <u>Section 507(b) Reservation</u>.  Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition First Lien Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition First Lien Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

22.    <u>Insurance</u>.  Until the DIP Obligations have been indefeasibly paid in full, at all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and shall name the DIP Agent as loss payee thereunder.

23.    <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the DIP Agent or the Required DIP Lenders to exercise rights and remedies under this Final Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

24.    <u>Perfection of the DIP Liens and Adequate Protection Liens</u>.

(a)    The DIP Agent, the Prepetition First Lien Administrative Agent, and the Prepetition Second Lien Administrative Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control

agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder.  Whether or not the DIP Agent, the Prepetition First Lien Administrative Agent, or the Prepetition Second Lien Administrative Agent shall (at the direction of the applicable required lenders) choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not, subject to the Challenge Period, subject to challenge, dispute, or subordination as of the date of entry of this Final Order.  If the DIP Agent, the Prepetition First Lien Administrative Agent, or the Prepetition Second Lien Administrative Agent (at the direction of the applicable required lenders) determines to file or execute any financing statements, agreements, notice of liens, or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent, the Prepetition First Lien Administrative Agent, or the Prepetition Second Lien Administrative Agent (at the direction of the applicable required lenders), and the automatic stay shall be modified to allow such filings.

(b)      A certified copy of this Final Order may, at the direction of the applicable Required DIP Lenders, be filed with or recorded in filing or recording offices by the DIP Agent, the Prepetition First Lien Administrative Agent, or the Prepetition Second Lien Administrative Agent in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Final Order.

(c)      Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of

any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law.  Any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Final Order, subject to applicable law.

25.     <u>Release</u>.  Subject to the rights and limitations set forth in Paragraph 12 of this Final Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the DIP Secured Parties and the Prepetition First Lien Secured Parties (each in their respective roles as such), and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the DIP

Obligations, the DIP Liens, the DIP Documents, the Prepetition First Lien Obligations, the First Lien Loan Liens or the Prepetition First Lien Loan Documents, as applicable, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties and the Prepetition First Lien Secured Parties; *provided* that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Documents.

26.     Credit Bidding & Sale Provisions.  Subject to the terms of the RSA (as defined in the DIP Credit Agreement), the DIP Agent (at the direction of the Required DIP Lenders) and subject to the provisions of section 363(k) of the Bankruptcy Code and subject to paragraph 12 of this Final Order, the Prepetition First Lien Administrative Agent (at the direction of the Required Lenders (as defined in the Prepetition Credit Agreement)) shall have the right to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the underlying lenders' respective claims, including, for the avoidance of doubt, Adequate Protection Superpriority Claims, if any, in any sale of all or any portion of the Prepetition Collateral or the DIP Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii).  No later than the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors under section 363 or 1129 of the Bankruptcy Code, and subject in all respects to the Carve Out, (i) the Prepetition L/Cs outstanding as of such date shall be cash collateralized at 100% of the face amount, the Debtors shall cause the establishment of a "backstop" letter of credit acceptable to the issuer of the

Prepetition L/Cs at 100% of the face amount of such Prepetition L/Cs, or the issuer of the Prepetition L/Cs and the Required DIP Lenders shall agree on an alternative treatment or arrangement with respect to such Prepetition L/Cs and (ii) any other administrative expense claims of the First Lien Administrative Agent or its affiliates arising from ordinary course cash management services (including, for the avoidance of doubt, any obligations of the Debtors under the Cash Management Order) shall be paid in full and cash.

27.     Preservation of Rights Granted Under this Final Order.

(a)     Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all Commitments are terminated, the Prepetition First Lien Secured Parties shall:  (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition First Lien Loan Documents or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in Paragraph 24 herein.

(b)     In the event this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Prepetition First Lien Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the Prepetition First Lien Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 363(m) of the Bankruptcy Code.

(c)      Unless and until all DIP Obligations, Prepetition First Lien Obligations, and Adequate Protection Payments are indefeasibly paid in full, in cash, and all Commitments are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the DIP Documents or, if not provided for therein, with the prior written consent of the DIP Agent, the Required DIP Lenders, and the Prepetition First Lien Administrative Agent, (x) any modification, stay, vacatur, or amendment of this Final Order or (y) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Cases, *pari passu* with or senior to the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, or the Prepetition First Lien Obligations, or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the DIP Documents (including the Carve Out), any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens or the First Lien Loan Liens, as applicable; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iv) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; (v) an order converting or dismissing any of the Cases; (vi) an order appointing a chapter 11 trustee in any of the Cases; or (vii) an order appointing an examiner with enlarged powers in any of the Cases.

(d)      Notwithstanding any order dismissing any of the Cases entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the DIP L/C Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the other administrative

claims granted pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection Payments are indefeasibly paid in full in cash (and such DIP Liens, DIP Superpriority Claims, the DIP L/C Superpriority Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Final Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) to the fullest extent permitted by law the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(e)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the DIP L/C Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition First Lien Secured Parties, and the Prepetition Second Lien Secured Parties granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, the DIP L/C

26919129.1

Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties, the Prepetition First Lien Secured Parties, and the Prepetition Second Lien Secured Parties granted by the provisions of this Final Order shall continue in full force and effect until the DIP Obligations and the Adequate Protection Payments are indefeasibly paid in full, in cash (or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the Required DIP Lenders and the DIP Agent).

(f)     Other than as set forth in this Final Order, neither the DIP Liens nor the Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Cases or arising after the Petition Date, and neither the DIP Liens nor the Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

28.     <u>Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral</u>. Notwithstanding anything to the contrary set forth in this Final Order, none of the DIP Facility, the DIP Collateral, the Prepetition Collateral, including Cash Collateral, or the Carve Out or proceeds thereof may be used:  (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (i) against any of the DIP Secured Parties or the Prepetition First Lien Secured Parties (each in their capacities as such), and each of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" claims and

causes of action, or seeking relief that would impair the rights and remedies of the DIP Secured

Parties or the Prepetition First Lien Secured Parties (each in their capacities as such) under the DIP

Documents, the Prepetition First Lien Loan Documents, or this Final Order, including, without

limitation, for the payment of any services rendered by the professionals retained by the Debtors

or the Committee in connection with the assertion of or joinder in any claim, counterclaim, action,

suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or

other contested matter, the purpose of which is to seek, or the result of which would be to obtain,

any order, judgment, determination, declaration, or similar relief that would impair the ability of

any of the DIP Secured Parties or the Prepetition First Lien Secured Parties to recover on the DIP

Collateral or the Prepetition Collateral or seeking affirmative relief against any of the DIP Secured

Parties or the Prepetition Parties related to the DIP Obligations or the Prepetition First Lien

Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP

Obligations or the Prepetition First Lien Obligations, or the DIP Agent's, the DIP Lenders,' and

the Prepetition First Lien Secured Parties' liens or security interests in the DIP Collateral or

Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief

against the DIP Secured Parties or the Prepetition First Lien Secured Parties, or the DIP Agent's,

the DIP Lenders,' the Prepetition First Lien Secured Parties' respective liens on or security

interests in the DIP Collateral or the Prepetition Collateral that would impair the ability of any of

the DIP Secured Parties or the Prepetition First Lien Secured Parties, as applicable, to assert or

enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations

or the Prepetition First Lien Obligations, to the extent applicable; (b) for objecting to or challenging

in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or

interests (including the First Lien Loan Liens) held by or on behalf of each of the Prepetition First

Lien Secured Parties related to the Prepetition First Lien Obligations, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the DIP Obligations, the DIP Liens, the Prepetition First Lien Obligations, or the First Lien Loan Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens, or (y) any of the First Lien Loan Liens or any other rights or interests of any of the Prepetition First Lien Secured Parties related to the Prepetition First Lien Obligations or the First Lien Loan Liens, *provided* that no more than $150,000 of the proceeds (the "Investigation Budget") of the DIP Facility, the DIP Collateral, or the Prepetition Collateral, including the Cash Collateral, in the aggregate, may be used by the Committee solely to investigate, within the Challenge Period, the claims, causes of action, adversary proceedings, or other litigation against the Prepetition First Lien Secured Parties solely concerning the legality, validity, priority, perfection, enforceability or extent of the claims, liens, or interests (including the First Lien Loan Liens) held by or on behalf of each of the Prepetition First Lien Secured Parties related to the Prepetition First Lien Obligations. The Committee may request that any fees and expenses of the Committee Professionals incurred in connection with the investigation described in this Paragraph 28 in excess of the Investigation Budget ("Excess Fees and Expenses") be entitled to administrative expense priority pursuant to Bankruptcy Code section 503(b), and the rights of each Prepetition Secured Party, DIP Secured Party, the Debtors and all other parties in interest to object to such request are reserved; provided, however, that Excess Fees and Expenses shall be (i) junior in priority to the Carve Out, the DIP Superpriority Claims, the DIP

L/C Superpriority Claims, and the Adequate Protection Superpriority Claims and (ii) shall not be paid from the proceeds of DIP Collateral or from Cash Collateral, other than to the extent such amounts are funded pursuant to the wind-down budget for the Debtors' wind-down of their estates upon the closing of a sale or sales of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code.  Nothing contained in this Paragraph 28 shall prohibit (x) the Debtors from responding or objecting to or complying with discovery requests of the Committee, in whatever form, made in connection with such investigation or the payment from the DIP Collateral (including Cash Collateral) of professional fees related thereto or the payment from DIP Collateral (including Cash Collateral) of professional fees for the Debtors or the Committee related to contesting or challenging whether a Termination Declaration has in fact occurred or (y) the Committee from challenging or objecting to any bidding procedures or sale of assets of the Debtors that contemplate credit bid by any of the DIP Secured Parties or Prepetition First Lien Secured Parties or the payment from the DIP Collateral (including Cash Collateral) of professional fees in connection therewith or in connection with any valuation disputes or other matter in connection with the Cases.

29.    <u>Conditions Precedent</u>.  Except as provided for in the Carve Out, no DIP Lender shall have any obligation to make any DIP Loan under the respective DIP Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

30.    <u>Intercreditor Agreement.</u>  Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition First Lien Loan Documents or any of the Second Lien Note Documents (as defined in the Intercreditor Agreement) (i) shall remain in full force and effect, and

(ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties; *provided* that nothing in this Final Order shall be deemed to provide liens to any Prepetition First Lien Secured Party or Prepetition Second Lien Secured Party on any assets of the Debtors except as set forth herein. Pursuant to the Intercreditor Agreement, the Second Lien Secured Parties are prohibited from opposing or objecting to (and are deemed to consent to) any post-petition financing (including any debtor in possession financing) provided by any of the First Lien Secured Parties pursuant to section 364 of the Bankruptcy Code (including on a priming basis) unless the First Lien Administrative Agent shall have opposed or objected to such debtor-in-possession financing.

31.   <u>Binding Effect; Successors and Assigns</u>.  The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition First Lien Secured Parties, the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties and the applicable Prepetition First Lien Secured Parties; *provided* that, except to the extent expressly set forth in this Final Order, the Prepetition First Lien Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise) to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this

Final Order or the DIP Documents, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

32.    <u>Limitation of Liability</u>.  In determining to make any loan under the DIP Documents, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Final Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition First Lien Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

33.    <u>No Requirement to File Claim for DIP Obligations</u>.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the DIP Agent nor any DIP Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or

request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's or any DIP Lender's rights, remedies, powers, or privileges under any of the DIP Documents, this Final Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

34.    <u>No Requirement to File Claim for Prepetition First Lien Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the Prepetition First Lien Administrative Agent nor any Prepetition First Lien Lender shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition First Lien Obligations; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Prepetition First Lien Loan Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Prepetition First Lien Administrative Agent's or any Prepetition First Lien Lender's rights, remedies, powers, or privileges under any of the Prepetition First Lien Loan Documents, this Final Order, or applicable law.   The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

35.    <u>No Marshaling</u>.  The DIP Agent and the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to this Final Order, the DIP Documents and the Prepetition First Lien Loan Documents (subject to the Intercreditor Agreement), notwithstanding any other agreement or provision to the contrary, and the Prepetition First Lien Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral.

36.    [*Reserved*].

37.    <u>Equities of the Case</u>.  The Prepetition First Lien Secured Parties shall each be entitled to all the rights and benefits of section 522(b) of the Bankruptcy Code, and, subject to and upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition First Lien Secured Parties with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral).

38.    <u>Chubb Reservation of Rights</u>.  For the avoidance of doubt, nothing, including the DIP Credit Agreement and/or this Final Order, alters or modifies the terms and conditions of any insurance policies issued by ACE American Insurance Company and/or any of its affiliates and any agreements related thereto.

39.    Other Modifications to DIP Credit Agreement.  Notwithstanding anything herein or in the DIP Credit Agreement, section 6.02(e) of the DIP Credit Agreement shall be amended and restated in its entirety as follows:

> "to the Specified Lender Advisors, promptly, but in no event later than 48 hours after receipt (subject to any confidentiality obligations therein), copies of all (i) formal process or offering or marketing materials provided generally to participants in the Sale Process (which shall not be required to

include individual Q&A responses to diligence requests, unless requested by the Specified Lender Advisors), (ii) written proposals, term sheets, commitment letters, and any other similar materials received in connection with the Sale Process, as applicable, and (iii) all bidding materials on a redacted basis, including, but not limited to, marketing materials; provided that the Borrower shall also (x) promptly, but in no event later than 48 hours after receipt, provide all binding bids received in connection with the Sale Process on an un-redacted basis when, and if, received, and (y) promptly communicate any material developments with respect to the Sale Process to the Specified Lender Advisors, in good faith; and provided, further that notwithstanding the foregoing, the Borrower will not be required to deliver such materials or make any communications set forth in this clause (e)(ii) and (iii) (except for any communications that are made to bidders generally) during any period where the Stalking Horse Bidder submits (or indicates its intent to submit) a credit bid;"

40.     <u>Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

41.     <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: August 18th, 2020**
**Wilmington, Delaware**

26919129.1