# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GLOBAL EAGLE ENTERTAINMENT INC.,[1] | ) Case No. 20-11835 (JTD) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket Nos. 95 & <u>511</u>** |

## ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ASSETS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "**<u>Motion</u>**") [Docket No. 95] of the above-captioned debtors and debtors-in-possession (collectively the "**<u>Debtors</u>**") for an order, pursuant to sections 105(a), 363(b), 363(f), and 365 of title 11 of the United States Code (the "**<u>Bankruptcy Code</u>**"), Rules 2002, 6004, 6006(f), 6007, 9007, 9008, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**<u>Bankruptcy Rules</u>**"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**<u>Local Rules</u>**"), authorizing and approving, among other things, (a) entry into that certain *Asset Purchase Agreement* (the "**<u>APA</u>**"),[2] with GEE Acquisition Holdings Corp. (the "**<u>Purchaser</u>**"), a copy of which is annexed hereto as **<u>Exhibit A</u>**, (b) the proposed sale (the "**<u>Sale</u>**")

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Global Eagle Entertainment Inc. (7800), Airline Media Productions Inc. (2314), Emerging Markets Communications, LLC (0735), Entertainment in Motion, Inc. (3908), Global Eagle Entertainment Operations Solutions, Inc. (3375), Global Eagle Services, LLC (7899), Global Eagle Telecom Licensing Subsidiary LLC (2547), IFE Services (USA), Inc. (2120), Inflight Productions USA, Inc. (8493), Maritime Telecommunications Network, Inc. (9974), MTN Government Services, Inc. (6069), MTN International, Inc. (8559), MTN License Corp. (0314), N44HQ, LLC (0570), Post Modern Edit, Inc. (6256), Row 44, Inc. (2959), and The Lab Aero, Inc. (9831). The Debtors' address is 6080 Center Drive, Suite 1200, Los Angeles, California 90045.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the APA, as applicable.

of substantially all of the Debtors' assets (the "**Purchased Assets**") free and clear of all Encumbrances (as defined below), other than Permitted Encumbrances, pursuant to the terms of the APA, (c) assumption and assignment of certain Contracts of the Debtors (the "**Purchased Contracts**") and assignment of the Purchased Contracts to Purchaser, and (d) other related relief; and the Court having entered an order [Docket No. 239] (the "**Bid Procedures Order**") approving the bid procedures (the "**Bid Procedures**"); and the Debtors having identified the bid by Purchaser as the highest or otherwise best bid for the Purchased Assets; and upon the *Declaration of Neil A. Augustine* in support of the Motion [Docket No. 491] (the "**Augustine Declaration**") and the *Declaration of Jonathan Goulding* in support of the Motion [Docket No. 492]; and the Auction having been cancelled in accordance with the Bid Procedures; and the Debtors having filed the *Notice of Auction Cancellation and Successful Bidder* [Docket No. 462], designating the Purchaser as the Successful Bidder for the Purchased Assets; and the Court having conducted a hearing on the Motion on October 15, 2020 (the "**Sale Hearing**"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having (i) reviewed and considered the Motion, all relief related thereto, the objections thereto, and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (ii) found that, after an extensive marketing process by the Debtors, Purchaser has submitted the highest or otherwise best bid for the Purchased Assets; and that adequate and sufficient notice of the Bid Procedures, the APA, and all transactions contemplated thereunder and in this sale order (this "**Sale Order**") were given pursuant to and consistent with the Bid Procedures Order; and that reasonable and adequate notice of the Motion and Bid Procedures Order having been provided to all persons required to be served in accordance with the Bankruptcy Code and the Bankruptcy Rules; and that all interested parties having been afforded

an opportunity to be heard with respect to the Motion and all relief related thereto; and that the Court has jurisdiction to consider the Motion and approve the Sale; and upon the arguments and statements in support of the Motion presented at the Sale Hearing before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]

A.    **Jurisdiction and Venue.**  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory bases for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 6007, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1.

C.    **Final Order.**  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, where appropriate.  *See* Bankruptcy Rule 7052.

D.    **Notice**.  As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, APA, Sale Hearing, Sale, and transactions contemplated thereby has been provided in accordance with the Bid Procedures Order, sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and the Local Rules.  The Debtors have complied with all obligations to provide notice of the Motion, the Auction, the APA, and the Sale Hearing as set forth in the Bid Procedures Order.   The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, APA, Auction, Sale or Sale Hearing is or shall be required.  The disclosures made by the Debtors concerning the Motion, the APA, the Auction, Sale and Sale Hearing were good, complete, and adequate.   The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

E.    In accordance with the Bid Procedures Order, the Debtors have served a notice of the Purchased Contracts [Docket No. 244] (the "**Cure Notice**"), which Cure Notice was supplemented and amended as to certain Purchased Contracts on September 28, 2020 [Docket No. 428] (the "**First Supplemental Cure Notice**") and on October 13, 2020 [Docket No. 488] (the "**Second Supplemental Cure Notice**," and together with the First Supplemental Cure Notice, the "**Supplemental Cure Notices**") identifying the amount required to cure any and all defaults and actual pecuniary losses to the non-Debtor counterparty to such Purchased Contracts resulting from such defaults, including, but not limited to, all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the non-Debtor counterparties can assert under the Purchased Contracts, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating

to, the Purchased Contracts (the foregoing amounts as stated in the Cure Notice or Supplemental Cure Notices, as applicable, collectively referred to as the "**Cure Amounts**") upon each non-Debtor counterparty to a Purchased Contract.  The service and provision of the Cure Notice and the Supplemental Cure Notices were good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of assumption and assignment of the Purchased Contracts or establishing a Cure Amount for any respective Purchased Contract.  Non-Debtor counterparties to the Purchased Contracts have had or will have, as applicable, an adequate opportunity to object to assumption and assignment of the applicable Purchased Contract and the Cure Amount set forth in the Cure Notice or the Supplemental Cure Notices, as applicable (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline for a non-Debtor counterparty to file an objection to the stated Cure Amounts in the Cure Notice or the First Supplemental Cure Notice, as applicable (a "**Cure Objection**") has expired and, to the extent any such party timely filed a Cure Objection, all such Cure Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties.  To the extent that any non-Debtor counterparty (i) did not timely file a Cure Objection by the applicable objection deadline listed in the Cure Notice or the First Supplemental Cure Notice (the "**Cure Objection Deadline**"), or (ii) does not timely file a Cure Objection by the applicable objection deadline listed in the Second Supplemental Cure Notice, such party shall be deemed to have consented to the (x) assumption and assignment of the Purchased Contract and (y) proposed Cure Amount set forth on the Cure Notice or the Supplemental Cure Notices, as applicable.

F.    **Corporate Authority**.  The Debtors (i) have full corporate power and authority to execute, deliver, and perform their obligations under the APA and all other documents contemplated thereby and by this Sale Order, and the Debtors' sale of the Purchased Assets has been duly and validly authorized by all necessary corporate or similar action, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the APA, and (iii) have taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for herein or in the APA, are required for the Debtors to consummate such transactions.

G.    The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtors nor Purchaser is entering into the transactions contemplated by the APA fraudulently, including but not limited to, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

H.    The Debtors are the sole and lawful owner of the Purchased Assets.  Subject to sections 363(f) and 365(a) of the Bankruptcy Code, the transfer of each of the Purchased Assets to Purchaser, in accordance with the APA and this Sale Order will be, as of the Closing Date (as defined in the APA), a legal, valid, binding and effective transfer of the Purchased Assets, which transfer vests or will vest Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Claims and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities).  Claims, as defined in the APA, shall include, but not be limited to, all debts arising under, relating to, or in connection with any act of the Debtors or claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive

27196858.1

covenants, covenants not to compete, rights to refunds, escheat obligations, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, applicable law, equity, or otherwise (including, without limitation, rights with respect to claims and Encumbrances (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or Purchaser's interests in the Purchased Assets, or any similar rights, (ii) in respect of taxes owed by the Debtors for periods prior to the Closing Date, including, but not limited to, sales, income, use, or any other type of tax, or (iii) in respect of restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) relating to, accruing, or arising any time prior to the Closing Date, with the exception of the Assumed Liabilities.

I.      **Business Judgment**.  Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith and hereunder (including with respect to the Committee Settlement (as defined below)) have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to Purchaser is necessary and appropriate to preserve and maximize the value of the Debtors' estates.

J.      The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence to implement the APA and to consummate the Sale contemplated thereby without any interruption.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

K.      The consummation of the Sale and the assumption and assignment of the Purchased Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale and the transactions contemplated thereby.

L.      **Good Faith of Purchaser and Debtors**.  The APA was negotiated, proposed, and entered into by the Debtors and Purchaser, their management and their respective boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals, and representatives, without collusion, in good faith, and as the result of arm's length bargaining positions and is substantively and procedurally fair to all parties.  Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither any of the Debtors nor Purchaser has engaged in any conduct that would cause or permit the Sale or the APA to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code.  Specifically, Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders.  Purchaser is purchasing the Purchased Assets, in accordance with the APA, in good faith, and is a good faith purchaser within the meaning of sections 363(m) or 364(e) of the Bankruptcy Code and is therefore entitled to all

of the protections afforded by such provision and otherwise has proceeded in good faith in all respects in connection with the Debtors' chapter 11 cases.  As demonstrated by (i) the Augustine Declaration; (ii) any testimony and other evidence proffered or adduced at the hearing with respect to the approval of the Bidding Procedures held on August 17 and 18, 2020 (the "**Bid Procedures Hearing**") and the Sale Hearing and (iii) the representations of counsel made on the record at the Bid Procedures Hearing and the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bid Procedures Order and, among other things: (a) the Debtors and Purchaser complied with the provisions in the Bid Procedures Order; (b) Purchaser agreed to subject its bid to the competitive bid procedures set forth in the Bid Procedures Order; (c) the Debtors and their investment banker, Greenhill & Co., engaged in a robust and extensive marketing and sale process, including both prior to the Petition Date and through the postpetition sale process pursuant to the Bid Procedures Order and the Bid Procedures; and (d) all payments to be made by Purchaser in connection with the Sale have been disclosed.

      M.    **Highest or Otherwise Best Offer.**  The Debtors conducted the Sale in accordance with, and have otherwise complied in all material respects with, the Bid Procedures Order.  The Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The Bid Procedures were duly noticed and the Sale was conducted in a non-collusive, fair, and good-faith manner, and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Purchased Assets.  The APA constitutes the highest or otherwise best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the APA constitutes

27196858.1

the highest or otherwise best offer for the Purchased Assets is a valid and sound exercise of their fiduciary duties and constitutes a valid and sound exercise of the Debtors' business judgment.

N.      **Consideration**.  The consideration provided by Purchaser pursuant to the APA and this Sale Order (a) was negotiated at arm's-length, (b) is fair and reasonable, (c) is the highest or otherwise best offer for the Purchased Assets, and (d) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than Purchaser. Approval of the Motion, the APA, the Sale and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

O.      **Secured Claims and Credit Bid**. The Purchaser is a Delaware corporation that was formed on behalf of the Prepetition First Lien Lenders and the DIP Lenders (each term as defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay and (VI) Granting Related Relief* [Docket No. 233] (the "**DIP Order**")) and, upon the Closing Date, will be owned by the Prepetition First Lien Lenders on a *pro rata* basis subject to the terms of the APA.  Pursuant to the terms of the APA and the DIP Order, the Prepetition First Lien Lenders are secured creditors of the Debtors, holding allowed Claims in the amount of the Prepetition First Lien Obligations (as defined in the DIP Order) secured by valid, binding, perfected, and

enforceable first-priority security interests in and liens against each of the Debtors, their estates and the property of their estates of which $586,500,000 of such Prepetition First Lien Obligations will be credit bid in connection with the Sale and APA (such Prepetition First Lien Obligations, collectively, the "**Credit Bid Claim**" and, the amount of such Credit Bid Claim, the "**Credit Bid Consideration**").  The Prepetition First Lien Administrative Agent (as defined in the DIP Order), on behalf of the Prepetition First Lien Lenders, has the right under section 363(k) of the Bankruptcy Code and was authorized by this Court pursuant to the Bid Procedures Order, to credit bid up to the full amount of the Prepetition First Lien Obligations (including, for the avoidance of doubt, the Credit Bid Claim).  Pursuant to the APA, the Purchaser agreed to provide, as consideration for the Purchased Assets, the Purchase Price, among other things, which includes an amount up to the full amount of the Credit Bid Consideration, the Additional Sale Consideration and, as necessary, the Additional Credit Bid Consideration (as defined below).  For the avoidance of doubt, nothing herein shall prejudice the rights of the official committee of unsecured creditors (the "**Committee**") as set forth in the *Stipulation Concerning Challenge Period Termination Date Set Forth in the Final DIP Order* [Docket No. 455-1].

P.    Pursuant to the Bid Procedures Order, the Prepetition First Lien Administrative Agent, by assigning its right to the Purchaser to credit bid at the direction of the Prepetition First Lien Lenders, was authorized to credit bid up to the full amount of the Credit Bid Consideration pursuant to a Direction Letter provided by the "Required Lenders" under the Prepetition Credit Agreement (as defined in the DIP Order).

Q.    Additionally, pursuant to the terms of the APA and the DIP Order, the DIP Agent (as defined in the DIP Order), by assigning its right to the Purchaser to credit bid at the direction of the DIP Lenders, was authorized, as necessary, to credit bid up to $5 million of the DIP

Obligations pursuant to a Direction Letter provided by the "Required Lenders" under the DIP Facility (such amount, the "**Additional Credit Bid Consideration**").

R.       **No Successor Liability.** By virtue of the consummation of the transactions contemplated under the APA: (i) the Purchaser is not a continuation of the Debtors and their respective estates, there is not substantial continuity between Purchaser and the Debtors, and there is no continuity of enterprise between the Debtors and Purchaser; (ii) the Purchaser is not holding itself out to the public as a continuation of the Debtors or their respective estates; (iii) the transactions do not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtors and/or the Debtors' estates; and (iv) Purchaser is not a successor or assignee of the Debtors or their estates for any purpose, including, but not limited to, under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule or regulation (including. without limitation. filing requirements under any such laws, rules. or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. and Purchaser and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "**WARN Act**"), 929 U.S.C. §§ 210 et seq. or the Comprehensive Environmental Response Compensation and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the

Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act.  Except for the Assumed Liabilities, (i) the transfer of the Purchased Assets to Purchaser and (ii) the assumption and assignment to Purchaser of the Purchased Contracts do not and will not subject Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of antitrust or successor or transferee liability.

S.    **Free and Clear**.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full and, therefore, the Debtors may sell the Purchased Assets free and clear of any liens, defenses (including rights of setoff and recoupment), and interests, in each case, in, on, or related to the Purchased Assets, including security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, mechanics' and materialman's liens, assignments, preferences, debts, easements, charges, suits, licenses, options, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the Purchased Assets (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-

27196858.1

material, statutory or non-statutory, matured or unmatured, legal or equitable, including any and all such liabilities, causes of action, contract rights and claims arising out of the Debtors' continued operations following the Closing Date (collectively, "**Encumbrances**"), other than as expressly contemplated by the APA, including Permitted Encumbrances.  Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale to Purchaser and the assumption of any Assumed Liabilities by Purchaser were not free and clear of all Encumbrances other than the Assumed Liabilities and Permitted Encumbrances.  The Debtors may sell the Purchased Assets free and clear of any Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each entity with an Encumbrance in the Purchased Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrance; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of such Encumbrances who did not object, or withdrew their objections, to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Encumbrances (other than the Assumed Liabilities and Permitted Encumbrances) are adequately protected by having their Encumbrances attach to the proceeds received by the Debtors (if any) that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances, with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Purchased Assets or their proceeds, if

27196858.1

any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

T.      The sale, conveyance, assignment and transfer of any personally identifiable information pursuant to the terms of the APA and this Sale Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Sale is permitted pursuant to Section 363(b)(1)(A) of the Bankruptcy Code. Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale.

U.      **Cure/Adequate Assurance**.  The assumption and assignment of the Purchased Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, is integral to the Sale and the transactions contemplated pursuant to the APA, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.  Payment of the Cure Amounts by the Purchaser shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Purchased Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  Purchaser's financial wherewithal to consummate the transactions contemplated by the APA and the evidence presented at the Sale Hearing demonstrating Purchaser's ability to perform the obligations under the Purchased Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of

sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

V.        Except for those objections and other disputes listed as adjourned on **Exhibit A** to the *Notice of Amended Agenda of Matters Scheduled for October 15, 2020 at 10:00 a.m. (ET)* (collectively, the "**Adjourned Objections**") [Docket No. 512], all objections to the assumption and assignment of any of the Purchased Contracts by Purchaser in accordance with the APA are hereby overruled.  To the extent that any counterparty failed or fails to timely object to the proposed Cure Amounts, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of its respective Purchased Contract(s) to Purchaser in accordance with the APA.  All rights of the parties with respect to the issues raised in the Adjourned Objections are preserved.

W.        **Compelling Circumstances for Immediate Sale**.  To maximize the value of the Purchased Assets, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale and the assumption and assignment of the Purchased Contracts occur within the time constraints set forth in the APA.  Time is of the essence in consummating the transactions contemplated by the APA, including, without limitation, the Sale and the assumption and assignment of the Purchased Contracts.

X.        The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA and this Sale Order, including, without limitation, the Sale and the assumption and assignment of the Purchased Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis.  The transactions contemplated by

the APA and this Sale Order, including, without limitation, the Sale, the Committee Settlement and the assumption and assignment of the Purchased Contracts neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and, therefore, does not constitute a *sub rosa* plan.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      **Motion is Granted**.  The Motion and the relief requested therein is GRANTED and APPROVED as set forth herein.

2.      **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion (other than the Adjourned Objections) that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, are hereby denied and overruled on the merits with prejudice including, based upon approval and consummation of the Committee Settlement, the Committee Sale Objection (defined below).

3.      **Approval**.  The APA, and all other ancillary documents, and all of the terms and conditions thereof, including the credit bid pursuant to section 363(k) of the Bankruptcy Code in an amount up to the full amount of the Credit Bid Amount, are hereby approved in all respects subject to the terms hereof.  Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are hereby authorized to (a) execute any additional instruments or documents that may be reasonably necessary or appropriate to implement the APA, the Sale and the transactions contemplated thereby, (b) consummate the Sale in accordance with the terms and conditions of the APA, the instruments to the APA contemplated thereby and the Committee Settlement, and (c)

execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the APA, including the assumption and assignment to Purchaser (in accordance with the APA) of the Purchased Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, the Sale and this Sale Order. Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document; *provided*, that prior to the enforcement of any remedy that would relate to taking custody or possession of any property of the Debtors' estates, the Purchaser shall provide three (3) business days advance notice to the Debtors and the Committee. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; *provided, however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto. Subject in all respects to the Committee Settlement, the portion of the obligations under the Prepetition First Lien Loan Documents, if any, in excess of the Credit Bid Amount provided under the APA shall remain outstanding against the applicable Debtors and any of their assets not purchased by the Purchaser, and the Prepetition First Lien Administrative Agent and the Prepetition First Lien Lenders shall continue to be protected by and entitled to the benefit of the terms and provisions of the Prepetition First Lien Loan Documents and other orders entered by this Court in respect thereof.

4.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Encumbrances or other interests in, against, or on all or any portion of the Purchased Assets (whether known or unknown), Purchaser, and all successors and assigns of Purchaser, the Purchased Assets, and any trustees, if

any, subsequently appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' chapter 11 cases.  This Sale Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Committee, the Purchaser, and the respective successors and assigns of each of the foregoing.

       5.       **Transfer of Purchased Assets Free and Clear of Encumbrances**.  Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets to Purchaser in accordance with the APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest Purchaser with title in and to the Purchased Assets and, other than the Assumed Liabilities, Purchaser shall take title to and possession of the Purchased Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than Permitted Encumbrances), including, but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Encumbrances and other interests to attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Purchased Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto; *provided that* pursuant to and in accordance with the APA and this Sale Order, the Debtors shall receive from Purchaser, or will retain sufficient cash to fund, the Wind-Down Amount (as may be adjusted pursuant to the terms of the Committee Settlement), including the Professional Fee Escrow (as defined below), as contemplated by the Wind-Down Budget (as may be adjusted pursuant to the terms of the Committee Settlement), to fund the anticipated costs of the wind-down of the Debtors' operations,

the administration of the estate following the Sale Transaction and the payment of all administrative and priority claims required to be paid pursuant to the Plan of Liquidation (as defined below), in each case consistent in all respects with the Committee Settlement.

6.       Unless otherwise expressly included in the definition of "Assumed Liabilities" or "Permitted Encumbrances" in the APA, Purchaser shall not be responsible for any Encumbrances, including, without limitation, in respect of the following:  (a) any labor or employment agreements; (b) any mortgages, deeds of trust, and security interests; (c) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the WARN Act, (vii) the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act, (ix) the Family Medical Leave Act, (x) the Labor Management Relations Act, (xi) the Multiemployer Pension Protection Act, (xii) the Pension Protection Act, (xiii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (xiv) the Comprehensive Environmental Response Compensation and Liability Act, (xv) state discrimination laws, (xvi) state unemployment compensation laws or any other similar state laws, or (xvii) any other state or federal benefits or claims relating to any employment with the Debtors or any of its respective predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (g) any

escheat or unclaimed property laws; (h) to the extent not included in the foregoing, any of the Excluded Liabilities under the APA;  and (i) any theories of successor or transferee liability.

7.      All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to Purchaser in accordance with the APA on the Closing Date or at such time thereafter as Purchaser may request. On the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances or other interests in the Purchased Assets, if any, other than Permitted Encumbrances, as such Encumbrances may have been recorded or may otherwise exist.

8.      If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances (other than Permitted Encumbrances) on, against, or in, all or any portion of the Purchased Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of such Encumbrances, liens, claims, interests, or other interests that the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized, and Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets and otherwise seek relief from the Court pursuant to this Sale Order, if necessary.

9.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to Purchaser of

27196858.1

the Debtors' interests in the Purchased Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances or other interest of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, other than the Assumed Liabilities and Permitted Encumbrances, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.  This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.  A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances and other interests of record except those assumed as Assumed Liabilities and other than Permitted Encumbrances.

10.    **Prohibition of Actions Against Purchaser**.  Except for the Assumed Liabilities and for the purposes of enforcing the Committee Settlement, Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets or other Assumed Liabilities expressly identified in the APA, including, but not limited to, any liability for any Encumbrances (other than Permitted Encumbrances), whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors

or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date.

11.    Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the APA, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate) arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to Purchaser in accordance with the APA are hereby forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors or assigns, its property or the Purchased Assets such persons' or entities' Encumbrances in, on, or to the Purchased Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its successors, assets, or properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Encumbrance, lien, claim, or interest against Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements

or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets. Notwithstanding the foregoing, the Debtors or the Committee reserve any and all rights to enforce the terms of the Committee Settlement and any and all of the Purchaser's/Ad Hoc DIP and First Lien Group's rights to enforce the terms of the Committee Settlement are also reserved.

12.     To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets to the extent transferred in the APA, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing Date.

13.     Pursuant to the terms of the APA, Purchaser and the Debtors shall use their reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary under applicable Law to consummate and make effective the transactions contemplated by the APA, including, without limitation, with respect to any and all Permit Approvals. If any Permit Approval is not obtained prior to the Closing, then, until the earlier of such time as (a) such Permit Approval is obtained by Debtors, (b) Purchaser separately obtains any such Permit (sufficient to conduct the business of the Company and its Subsidiaries in the Ordinary Course) and (c) the closing of the Chapter 11 Cases, Debtors shall, and shall cause their respective Subsidiaries to continue to, use reasonable best efforts to obtain, or cause to be obtained, such Permit Approval, and Purchaser shall reasonably cooperate with the Debtors, at Purchaser's sole cost and expense, subject to any approval of this Court that may be required, and the Debtors

shall and shall cause their Subsidiaries to enter into an arrangement reasonably acceptable to Purchaser as set forth in the APA.  Upon obtaining the relevant Permit Approval, each Debtor shall, and shall cause any of its applicable Subsidiaries to, promptly sell, convey, assign, transfer and deliver to Purchaser such Permit for no additional consideration.

14.     Notwithstanding any provision of the APA, this Sale Order, or any other order of this Court, no sale, transfer or assignment of any rights and interests of the Debtor in any federal license or authorization issued by the Federal Communications Commission ("**FCC**") shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder.  The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority, solely to the extent provided by law.

15.     Nothing in the APA or this Sale Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, (e) lease or (f) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

16.     No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale to the extent that any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

27196858.1

17.     Other than with respect to rights of the Debtors and the Committee to enforce the Committee Settlement as set forth in this Sale Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the APA and this Sale Order.

18.     Purchaser has given substantial consideration under the APA and this Sale Order for the benefit of the Debtors, their estates, and their creditors.  The consideration given by Purchaser shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of Purchaser by all holders of Encumbrances or liens against or interests in, or claims against, any of the Debtors or any of the Purchased Assets, other than with respect to the Assumed Liabilities and other than Permitted Encumbrances.  The consideration provided by Purchaser for the Purchased Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

19.     None of the Purchaser or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the APA and the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in the APA and this Sale Order.

20.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Sale Order, including, without limitation, the APA and the Sale.

27196858.1

21.      **Assumption and Assignment of Contracts.**  The Debtors are hereby authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to Purchaser, in accordance with the APA, effective upon the Closing Date, the Purchased Contracts free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities and Permitted Encumbrances) and (b) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be reasonably necessary to assign and transfer the Purchased Contracts and the Assumed Liabilities to Purchaser in accordance with the APA.

22.      With respect to the Purchased Contracts: (a) each Purchased Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Purchased Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Purchased Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or allow the party to such Purchased Contract to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Purchased Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Purchaser of each Purchased Contract, in accordance with the APA, have been satisfied; (e) the Purchased Contracts shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of Purchaser in accordance with the APA, notwithstanding any provision in any such Purchased Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment to and assumption by Purchaser in accordance with the APA; and (f) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Purchased Contract.

23.     All defaults or other obligations of the Debtors under the Purchased Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or promptly thereafter by payment of the Cure Amounts in accordance with the APA.  To the extent that any counterparty to a Purchased Contract did not or does not object to its Cure Amount by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Purchased Contract(s) to Purchaser in accordance with the APA.

24.     Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtors, Purchaser, and the appropriate contract or lessor counterparty (any such amendment being deemed approved by this Sale Order), the Cure Notice and the Supplemental Cure Notices, as applicable, reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Purchased Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to Purchaser of the Purchased Contracts in accordance with the APA.

25.     Upon the Debtors' assignment of the Purchased Contracts to Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure

Amounts by the Debtors, no default shall exist under any Purchased Contract, and no counterparty to any Purchased Contract shall be permitted (a) to declare a default by Purchaser under such Purchased Contract or (b) otherwise take action against Purchaser as a result of Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Purchased Contract. Each non-Debtor party to a Purchased Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Purchaser, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities or, against Purchaser, any counterclaim, defense, setoff, recoupment, or any other Claim asserted or assertable against the Debtors, and (ii) imposing or charging against Purchaser any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Purchaser of any Purchased Contract in accordance with the APA. The validity of such assumption and assignment of each Purchased Contract shall not be affected by any dispute between the Debtors and any non-Debtors party to a Purchased Contract relating to such contract's respective Cure Amounts.

26.     Except as provided in the APA or this Sale Order, after the Closing Date, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of Encumbrances, liens, claims, and interests are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property, or their assets or estates. The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Purchased Contracts.

27196858.1

27.     Notwithstanding anything herein to the contrary and subject to the APA, prior to the Closing Date, Purchaser may add or eliminate any Contract from the Original Contract and Cure Schedule (as defined in the APA), and thereby include or exclude such Contract from the definition of Purchased Contracts, pursuant to the procedures set forth in the APA.  Automatically upon the elimination of any Contract as a Purchased Contract, such Contract will constitute an Excluded Asset and will not be assigned to Purchaser, and no Liabilities arising thereunder or relating thereto shall be assumed by Purchaser.  To the extent applicable, the Debtors shall provide the Purchaser with the Contract & Cure Update Schedule (as defined in the APA) as required pursuant to the terms of the APA, and comply with all requirements pursuant to the terms of the APA, including, without limitation, using commercially reasonable efforts to establish proper Cure Costs for each Purchased Contract, including any added Contract, prior to the Closing Date.

28.     The Purchaser has demonstrated adequate assurance of future performance under the relevant Purchased Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

29.     **Southwest**.  The Debtors are assuming and assigning to the Purchaser certain executory contracts of the Debtors with Southwest Airlines, Co. ("**Southwest**"), with the relevant Debtor counterparty indicated after each, as set forth below:

    a.  Nos. S1-180, S1-181, Agreement Regarding Payment of Defense Costs, dated January 17, 2017 (GEE, Row 44)

    b.  No. S1-182, Amended and Restated Supply and Services Agreement, dated February 1, 2013 (Row 44)

    c.  No. S1-183, Amendment No. 1 to the Amended and Restated Supply and Services Agreement, dated July 10, 2013 (Row 44)

    d.  No. S1-184, Single Licensee Software Escrow Agreement, dated July 17, 2020 (GEE)

    e.  No. S1-227, S1-278, Assumption And Assignment Agreement (Row 44, GEE)

     f.   No. 8143, Amendment 1 to Beta Test Agreement (GEE)

     g.   No. 8144, Beta Test Agreement (GEE)

     h.   No. 8146, Customer Agreement (GEE)

     i.   No. 8148. Second Amended and Restated Supply and Services Agreement, dated December 13, 2016[4] (GEE)

     j.   No. 8149, Amendment No. 1 to Southwest Airlines Second Amended and Restated Supply & Services Agreement, dated November 9, 2017 (GEE)

     k.   No. S2-13, Letter Agreement, dated June 18, 2020 (GEE)

     l.   No. S2-14, Letter Agreement, dated November 22, 2019 (GEE)

(collectively, the "**Southwest Agreements**").

     30.    Southwest disputes the Cure Amount set forth by the Debtors on account of certain indemnification obligations under the Southwest Agreements (the "**Indemnification Obligations**") relating to Cause No. SC-122964; *SwiftAir, LLC v. Row 44, Inc., Southwest Airlines, Co., and Does 1-51*; in the Superior Court of California, County of Los Angeles—Western District, Santa Monica Courthouse (the "**SwiftAir Lawsuit**"), which Southwest contends are owed by the Debtors to Southwest pursuant to certain of the Southwest Agreements (the "**Indemnification Claims**").  The Debtors dispute that they owe any outstanding Indemnification Obligations to Southwest and the scope and extent of any such Indemnification Obligations. Southwest contends the Indemnification Obligations are owed pursuant to the Southwest Agreements, including that certain Second Amended and Restated Supply and Services Agreement by and between Southwest and GEE, dated December 13, 2016 (as amended) (the "**SSA**"), and that certain Agreement Regarding Payment of Defense Costs between GEE and Row 44, on the one hand, and Southwest, on the other, dated January 17, 2017, confirming the Indemnification

---

[4] Pursuant to the terms of the this agreement, each Schedule, Purchase Order, and/or Statement of Work (each as defined therein) issued pursuant to the agreement is deemed incorporated into the agreement, and, accordingly, is also, for the avoidance of doubt, being assumed and assigned by virtue of such incorporation.

Obligations owed and relating to payments to be made on account thereof (the "**Defense Costs Agreement**").  Each of the SSA and the Defense Costs Agreement are included in the Debtors' Second Supplemental Cure Notice and in the list of executory contracts being assumed and assigned herein.  Notwithstanding anything to the contrary herein, Southwest, on the one hand, and the Debtors or the Purchaser, as applicable, on the other hand, reserve all of their rights and remedies with respect to the Indemnification Claims, and nothing herein shall constitute a determination of, nor prejudice any such party's rights and remedies as to such Indemnification Claims.  The Debtors or the Purchaser, as applicable, are hereby authorized to settle, compromise, or otherwise resolve the Indemnification Claims in connection with the determination of any Cure Amounts owed to Southwest without further Court approval or notice to any party other than Southwest.  To the extent Southwest, on the one hand, and the Debtors or Purchaser, as applicable, on the other hand, are not able to resolve any dispute related to the Indemnification Claims, such claims shall be determined in accordance with the dispute resolution procedures set forth in paragraph 4 of the Defense Costs Agreement.

31.     Southwest has reviewed the projections and financial information provided by the Purchaser and agrees that adequate assurance of future performance under the Southwest Agreements, including the ability to promptly pay Cure Amounts upon resolution thereof as provided herein, has been provided in connection with assumption and assignment of the Southwest Agreements, as required under the Bidding Procedures and applicable law.  The foregoing agreement fully resolves Southwest's objection to the assumption and assignment of the Southwest Agreements, related to the Sale and the entry of this Order, including the objections in Southwest's *Objection to Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 360].

32.     **Broward County**.  Notwithstanding anything to the contrary in the Sale Motion, the APA, and this Sale Order, the Debtors remain obligated to pay all tangible personal property taxes of Broward County, Florida for the calendar year 2020 on any taxable personal property that was located in Broward County on January 1, 2020 and is subject to the Sale, in the ordinary course of business as they are ascertained.

33.     **Chubb Companies**.  Notwithstanding anything to the contrary in the Motion, the APA, any Contracts Schedule or Cure Notice or Supplemental Cure Notice, or this Sale Order, (a) nothing shall permit or effectuate a sale, an assignment or any other transfer of (i) any insurance policies that have been issued by ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Indemnity Insurance Company of North America, Westchester Fire Insurance Company, Federal Insurance Company, Chubb National Insurance Company and any of their U.S.-based affiliates and successors (collectively, the "**Chubb Companies**") and all agreements, documents or instruments relating thereto (collectively the "**Chubb Insurance Contracts**"), and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts, unless the Chubb Companies, the Debtors, and the Purchaser execute an assumption and assignment agreement (the "**Chubb Assumption Agreement**") in form and substance reasonably satisfactory to each of the parties and providing, among other things, that the Purchaser shall assume and shall be liable for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under the applicable Chubb Insurance Contracts that are the subject of the Chubb Assumption Agreement or unless the Court further orders otherwise (with all parties' respective rights preserved to seek or object to entry of such order); (b) the respective rights of the parties are fully preserved pending execution of the Chubb Assumption Agreement, including, for the avoidance

27196858.1

of doubt, in the event the parties do not reach agreement as to the Chubb Assumption Agreement, the Purchaser's or the Debtors' right to assert that the Debtors are entitled to assume and assign the Chubb Insurance Contracts to the Purchaser pursuant to the Sale and the right of the Chubb Companies to assert that the Chubb Insurance Contracts cannot be assumed and assigned pursuant to the Sale; (c) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (d) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts unless the Court further orders otherwise (with all parties' respective rights preserved to seek or object to entry of such order), *provided, however*, that to the extent any claim with respect to the Purchased Assets arises that is covered by any of the Chubb Insurance Contracts prior to the execution of the Chubb Assumption Agreement or entry of a further order of the Court authorizing the Debtors' assumption and assignment of the applicable Chubb Insurance Contracts to the Purchaser (with all parties' respective rights preserved as set forth in this section), the Debtors may pursue such claim in accordance with the terms of such Chubb Insurance Contracts and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "**Proceed Turnover**"), *provided, further, however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

34.    **Cigna**.  Notwithstanding anything to the contrary in this Sale Order, or any notice related thereto, but conditioned upon the occurrence of the Closing Date:  (a) the Employee Benefits Agreements (as defined in the objections filed by Cigna Health and Life Insurance Company and its affiliates [Docket Nos. 320 & 469] (collectively, "**Cigna**" and the "**Cigna Objections**")) through which Cigna provides administrative, insurance, and insurance-related services for the Debtors' employee benefits plan, shall be assumed and assigned to the Buyer as

of the Closing Date, and, in lieu of cure, all obligations due and unpaid under the Employee Benefits Agreements accruing before the Closing Date shall pass through to the Buyer and survive assumption and assignment so that nothing in this Sale Order or 11 U.S.C. §365 shall affect such obligations; and (b) upon Closing, the Debtors shall transfer to the Buyer, the Debtors' segregated bank accounts at Citibank, N.A., Account Nos. XXXXXX3756 , XXXXXX8046, and XXXXXX3801, held in the name of Debtor Global Eagle Entertainment, Inc., through which self-insured benefits claims of the Debtors' employees and their dependents are funded under the Employee Benefits Agreements.  This fully resolves the Cigna Objections.

35.    **Additional Sale Consideration**.   As consideration for the settlement (the "**Committee Settlement**") of the *Objection of the Official Committee of Unsecured Creditors to the Sale of Substantially all of the Debtors' Assets to Stalking Horse Bidder* [Docket Nos. 475, 486-1] (the "**Committee Sale Objection**"), Purchaser shall pay $8.5 million in cash in additional sale consideration in lieu of an equal amount of Credit Bid Consideration (such cash amount, the "**Additional Sale Consideration**"), which Additional Sale Consideration will be distributed pursuant to a chapter 11 plan of liquidation (the "**Plan of Liquidation**") to holders of allowed general unsecured claims (including, subject in all respects to the below, holders of allowed claims arising under the Securities Purchase Agreement (as defined in the DIP Order) (any such allowed claim, the "**Allowed SPA Claims**") and excluding any allowed deficiency claim arising under the Prepetition First Lien Loan Documents (as defined in the DIP Order) (but without prejudice to the rights of the First Lien Secured Parties (as defined in the DIP Order) under the Intercreditor Agreement (as defined in the DIP Order)), subject to the following:

a.       Subject to paragraph (c) below, if any or all of the distributions under the Plan of Liquidation (or other mechanism for distributions agreed by the Debtors, the

official committee of unsecured creditors (the "**Committee**"), and the Purchaser/Ad Hoc DIP and First Lien Group) on account of the Allowed SPA Claims is determined (or agreed) to be subject to turnover to the First Lien Secured Parties pursuant to the Intercreditor Agreement, the amount of any such distribution subject to turnover (the "**SPA Turnover Amount**") shall reduce the $8.5 million of Additional Sale Consideration by the amount of the SPA Turnover Amount.

b.  If the amount of the Allowed SPA Claims for purposes of distribution under the Plan of Liquidation (or other mechanism for distributions agreed by the Debtors, the Committee, and the Purchaser/Ad Hoc DIP and First Lien Group) is reduced below $196,642,577.58 (such amount, the "**SPA Claim Amount**")  (whether as determined by the Court or pursuant to a settlement, if any, with the holders of claims under the Securities Purchase Agreement) (the "**Reduced Allowed SPA Claims**") and such holders receive a distribution under the Plan of Liquidation (or other mechanism for distributions agreed by the Debtors, the Committee, and the Purchaser/Ad Hoc DIP and First Lien Group) on account of such Reduced Allowed SPA Claims, and turn over no portion of such distribution pursuant to the Intercreditor Agreement or paragraph (a) above, the $8.5 million of Additional Sale Consideration shall be reduced in an amount equal to an amount that is the product of (i) a fraction, the numerator of which shall be the SPA Claim Amount less the amount of the Reduced Allowed SPA Claims, and the denominator of which shall be the SPA Claim Amount *plus* all allowed general unsecured claims other than the Allowed SPA Claims, multiplied by (ii) $8.5 million (such amount, the "**SPA Pro Rata Share**").

c.      Notwithstanding the foregoing, (i) in the event the SPA Turnover Amount or the SPA Pro Rata Share is greater than $4.5 million, the Additional Sale Consideration shall be $4 million and (ii) if the amount of the Allowed SPA Claims for purposes of distribution under the Plan of Liquidation (or other mechanism for distributions agreed by the Debtors, the Committee, and the Purchaser/Ad Hoc DIP and First Lien Group) is (x) greater than or equal to SPA Claim Amount and (y) either (1) none of the distributions under the Plan of Liquidation (or other mechanism for distributions agreed by the Debtors, the Committee, and the Purchaser/Ad Hoc DIP and First Lien Group) made to holders of the Allowed SPA Claims are subject to turnover to the First Lien Secured Parties pursuant to the Intercreditor Agreement or (2) the Additional Sale Consideration available for distribution to holders of allowed general unsecured claims other than a holder of an Allowed SPA Claim is less than $4 million after accounting for the distribution to holders of an Allowed SPA Claim (including any distributions that are subject to turnover), the Additional Sale Consideration shall not be reduced and shall be $8.5 million.

d.      The Plan of Liquidation shall be consistent in all respects with the terms of the Committee Settlement as set forth herein and otherwise in form and substance acceptable to the Debtors, the Committee, and the Purchaser/Ad Hoc DIP and First Lien Group (unless otherwise agreed by all such parties) and filed by no later than November 10, 2020 with an accompanying motion (the "**Combined Hearing Motion**"), which the Debtors intend will seek a combined hearing for approval of the Plan of Liquidation and the corresponding disclosure statement (the "**Disclosure Statement**").  The Combined Hearing Motion, the Disclosure Statement, any order approving the Plan of Liquidation and the Disclosure Statement and any other documents, motions and exhibits related

thereto shall be in form and substance acceptable to the Debtors, the Committee and the Purchaser/Ad Hoc DIP and First Lien Group (unless otherwise agreed by all such parties).

e.      In order to ensure that the full $8.5 million of Additional Sale Consideration will be available for distribution to holders of allowed general unsecured claims (subject to any reductions in accordance with the above) under the Plan of Liquidation as envisioned by the Committee Settlement set forth herein, the Purchaser hereby agrees, and will be required, to fund the Wind-Down Amount in the amount necessary to satisfy all administrative and priority claims required to be paid pursuant to the Bankruptcy Code and any order of this Court in connection with the Plan of Liquidation.  The Committee, the Debtors and the Purchaser/Ad Hoc DIP and First Lien Group will work in good faith to reach agreement on the post-Closing professional fee and expense target budget amount (the "**Professional Fee Target**"), provided that the Professional Fee Target shall not be a cap on post-Closing professional fees and expenses and all such professional fees and expenses of the Debtors and the Committee shall be paid by the Purchaser through funding of the Wind-Down Amount regardless of whether such fees exceed the Professional Fee Target.  The Professional Fee Target shall include the reasonable fees and expenses of U.S. Bank N.A., as Indenture Trustee (including fees of counsel), which amount shall be no greater than $100,000.  For the avoidance of doubt, all allowed administrative claims for fees and expenses incurred by the Debtor and Committee professionals prior to Closing (including transaction fees for Greenhill & Co and Perella Weinberg Partners LP) will be paid in full, in cash and such amount shall be included in the Wind-Down Amount.

f.      For the avoidance of doubt, any deficiency claim on account of the First Lien Claims shall not be included as a general unsecured claim for any purposes hereunder

27196858.1

but holders of such claims shall retain all voting rights under the Plan of Liquidation and rights under the Intercreditor Agreement, including the right to seek turnover of any distributions from holders of Allowed SPA Claims that may be made under the Plan of Liquidation (or other mechanism for distributions agreed by the Debtors, the Committee, and the Purchaser/Ad Hoc DIP and First Lien Group).

g.      All parties reserve all rights with respect to the allowance (and amount) of any claims arising under the Securities Purchase Agreement and whether any or all of such claims are subject to turnover pursuant to the Intercreditor Agreement or otherwise.

h.      The Committee, the Debtors, and the Purchaser/Ad Hoc DIP and First Lien Group shall have the right to enforce all provisions of this Sale Order arising from, or relating to, the Committee Settlement.

36.      **Good Faith**.   The transactions contemplated by the APA are undertaken by Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Purchased Contracts) with Purchaser, unless such authorization is duly stayed pending such appeal.  Purchaser is a good faith purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

37.      **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety; *provided*, *however*, that this Sale Order shall govern if there is any inconsistency between the APA

(including all ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Sale Order shall control.

38.    **Non-Material Modifications**.  The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or adversely impact in any respect the terms of the Committee Settlement.   Any modification, amendment or supplement to the APA or any related agreements documents or other instruments that adversely impacts in any respect the terms of the Committee Settlement shall require the prior consent of the Committee.  For the avoidance of doubt, any references herein to the APA shall include any modifications to the APA as provided herein with respect to, or as may be required to effectuate, the Committee Settlement.

39.    **Payment of Certain Indebtedness**.  The Purchase Price shall include an amount of cash equal to the DIP Payment Amount; *provided* that, in lieu of paying all of the DIP Payment Amount, Purchaser may, by delivery of a written notice to the Debtors no later than three (3) Business Days prior to the Closing Date, elect to assume the DIP Obligations outstanding as of the Closing, and in such event, (x) the DIP Obligations outstanding as of the Closing shall become Assumed Liabilities under the APA and (y) the DIP Payment Amount to be paid by Purchaser at Closing shall be reduced to zero (0).

40.    **Wind-Down Amounts**.  The Purchase Price shall include an amount of cash equal to the Wind-Down Amount (as may be adjusted to comply with the terms of the Committee

Settlement), including the Professional Fee Escrow, subject to the Wind-Down Budget (as may be adjusted to comply with the terms of the Committee Settlement); *provided* that, in lieu of paying all or any portion of the Wind-Down Amount, Purchaser may, solely to the extent funds are available, by delivery of a written notice to the Debtors no later than three (3) Business Days prior to the Closing Date, instruct the Debtors to retain a portion of (but not to exceed) the cash actually held at the Closing by Debtors in an amount set forth in such written notice (any such cash retained by Debtors, "**Retained Cash**") and such Retained Cash shall reduce, on a dollar-for-dollar basis, the Wind-Down Amount to be paid by Purchaser at the Closing.  The portion of the Wind-Down Amount allocable to professional fees and expenses of estate professionals incurred or estimated in good faith to be incurred prior to Closing or post-Closing, as provided by the Committee Settlement, will be deposited in an escrow account for the benefit of such estate professionals (the "**Professional Fee Escrow**").  The Debtors shall utilize the Wind-Down Amount (as may be adjusted to comply with the terms of the Committee Settlement), including the Professional Fee Escrow, to fund the anticipated costs of the wind-down of the Debtors' operations, the administration of the estate following the Sale Transaction and the payment of all administrative and priority claims required to be paid pursuant to the Plan of Liquidation, in each case consistent in all respects with the Committee Settlement.  For the avoidance of doubt, the Wind-Down Amount and Wind-Down Budget shall be adjusted upward as necessary to provide for payment of (i) the actual amount of incurred and unpaid professional fees and expenses through the Closing, which shall be deposited into the Professional Fee Escrow, (ii) accrued postpetition liabilities through the Closing of the types noted in section 2.02(h) of the APA related to any assets that are designated to be Excluded Assets but which have not been paid under the DIP Facility as of

27196858.1

Closing due to timing and (iii) all administrative and priority claims required to be paid pursuant to the Plan of Liquidation as required by the Committee Settlement.

41. **Amounts Payable by Debtors.** Any amounts payable by any Debtor under the agreements or any of the documents delivered by any Debtor in connection with the APA or this Sale Order shall be paid in the manner provided in the APA and the Bid Procedures Order, without further order of this Court, shall be allowed administrative claims in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, shall have the other protections provided in the Bid Procedures Order, and shall not be discharged, modified, or otherwise affected by any reorganization plan for the Debtor, except by an express agreement with Purchaser, its successors, or assigns.

42. **Other Provisions**.   Other than as set forth herein, including with respect to the Committee Settlement, nothing in the APA or this Sale Order shall be deemed to amend, modify, or limit the rights and claims of the DIP Agent, the Prepetition First Lien Administrative Agent, the DIP Lenders, or the Prepetition First Lien Lenders pursuant to the DIP Order, the DIP Documents, or the Prepetition First Lien Loan Documents, or in respect of the DIP Obligations or the Prepetition First Lien Loan Obligations, or the liens, security interests, or claims of the DIP Agent, the DIP Lenders, the Prepetition First Lien Administrative Agent, or the Prepetition First Lien Lenders, until the Closing Date of the Sale and only to the extent permitted and as contemplated by the APA and the transactions contemplated thereunder.  For the avoidance of doubt, but subject in all respects to the Committee Settlement, any claims on account of the Prepetition First Lien Loan Obligations not included in the Credit Bid Consideration pursuant to section 363(k) of the Bankruptcy Code shall remain outstanding against the relevant Debtors until the repayment in full in cash or other agreed treatment of the Prepetition First Lien Obligations

and all claims in respect of the Prepetition First Lien Obligations shall remain outstanding until the consummation of the Sale. Upon the Closing, and subject in all respects to the Carve Out (as defined in the DIP Order), (i) the Prepetition L/Cs (as defined in the DIP Order) outstanding as of such date shall be cash collateralized at 100% of the face amount, the Debtors and/or Purchaser shall cause the establishment of a "backstop" letter of credit acceptable to the issuer of the Prepetition L/Cs at 100% of the face amount of such Prepetition L/Cs, or the issuer of the Prepetition L/Cs and the Required DIP Lenders (as defined in the DIP Order) shall agree on an alternative treatment or arrangement with respect to such Prepetition L/Cs and (ii) any other administrative expense claims of the Prepetition First Lien Administrative Agent or its affiliates arising from ordinary course cash management services shall be paid in full and cash with either cash on hand or from the Wind Down Amount.

43.    **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the APA or this Sale Order (including for the avoidance of doubt, the Committee Settlement).

44.    **Survival**. The terms and provisions of this Sale Order and the terms and provisions of the APA and any actions taken pursuant hereto or thereto as of the date of the entry of the Sale Order shall survive the entry of any order that may be entered, including, without limitation, converting the Debtors' cases from chapter 11 to chapter 7 or dismissing the Debtors' cases, and the terms and provisions of the APA, as well as the rights and interests granted pursuant to this Sale Order and the APA shall continue in these or any superseding cases and shall be binding upon

27196858.1

the Debtors and all other parties and their respective successors and permitted assigns, including

any trustee, examiner, party, entity, or other fiduciary hereafter appointed as a legal representative

of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

45.     **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h)

and 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed

for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately

upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the

Debtors and Purchaser intend to close the Sale as soon as practicable.  Any party objecting to this

Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal

being foreclosed as moot.

46.     **Calculation of Time.**  All time periods set forth in this Sale Order shall be

calculated in accordance with Bankruptcy Rule 9006.

47.     **Further Assurances**.  From time to time, as and when requested by any party, each

party shall execute and deliver, or cause to be executed and delivered, all such documents and

instruments and shall take, or cause to be taken, all such further or other actions as such other party

may reasonably deem necessary or desirable to consummate the transactions contemplated by the

APA, including such actions as may be necessary to vest, perfect, or confirm, of record or

otherwise, in Purchaser its right, title, and interest in and to the Purchased Assets.

48.     **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory

powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the

terms and provisions of this Sale Order and the APA, all amendments thereto, and any waivers

and consents thereunder, and each of the agreements executed in connection therewith to which

any Debtor is a party or which has been assigned by the Debtors to Purchaser in accordance with

27196858.1

the APA, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) interpret, implement, and enforce the provisions of this Sale Order and the APA, (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, (c) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Committee Settlement; (d) protect Purchaser against any Encumbrances or other interests in the Debtors or the Purchased Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (e) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts.

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: October 15th, 2020**
**Wilmington, Delaware**

27196858.1

45