**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- x

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| GLOBAL EAGLE ENTERTAINMENT | : | Case No. 20-11835 (JTD) |
| INC., *et al.*,[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | **Hearing Date: November 5, 2020 at 2:00 p.m. (ET)** |
| | : | |

------------------------------------------------------- x

**REPLY OF LATHAM & WATKINS LLP**
**IN SUPPORT OF MONTHLY FEE APPLICATION**

Global Eagle Entertainment Inc. and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this reply

(this "**Reply**") to the objection [Docket No. 468] of BMG Rights Management (US), LLC

("**BMG**" and the "**BMG Objection**") to the *First Monthly Application of Latham & Watkins LLP*

*for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Co-*

*Counsel to Debtors and Debtors in Possession for the Period From July 22, 2020 Through August*

*31, 2020* [Docket No. 407] ("**Latham**" and the "**Monthly Fee Application**"),[2] and respectfully

represent as follows:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Global Eagle Entertainment Inc. (7800), Airline Media Productions, Inc. (2314), Emerging Markets Communications, LLC (0735), Entertainment in Motion, Inc. (3908), Global Eagle Entertainment Operations Solutions, Inc. (3375), Global Eagle Services, LLC (7899), Global Eagle Telecom Licensing Subsidiary LLC (2547), IFE Services (USA), Inc. (2120), Inflight Productions USA Inc. (8493), Maritime Telecommunications Network, Inc. (9974), MTN Government Services, Inc. (6069), MTN International, Inc. (8559), MTN License Corp. (0314), N44HQ, LLC (0570), Post Modern Edit, Inc. (6256), Row 44, Inc. (2959), and The Lab Aero, Inc. (9831). The Debtors' address is 1821 E. Dyer Road, Suite 125, Santa Ana, California 92705.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Monthly Fee Application.

27280479.1

**REPLY**

1.      The Debtors commenced the Chapter 11 Cases after entering into a restructuring support agreement (the "**RSA**") with the Ad Hoc DIP and First Lien Lender Group that, among other things, provided for the Debtors initiating a sale process for all or substantially all of their assets, as well as financing the Debtors' operations and administration of the Chapter 11 Cases. Although the Debtors benefited from entering into the chapter 11 process with the RSA, the Chapter 11 Cases were not "prepackaged."  Since the Petition Date, the Debtors, together with Latham and their other advisors, have worked tirelessly to implement a Court-approved sale process with a view towards maximizing the value of the Debtors' assets, while simultaneously working to stabilize their multinational business operations during the global COVID-19 pandemic, including by obtaining approval of postpetition financing necessary to administer the Chapter 11 Cases.

2.      These efforts have culminated in the entry of the *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authoring the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. 518] (the "**Sale Order**") less than three months after the Petition Date and in accordance with the Court-approved sale timeline, which will ensure that the Debtors are able to preserve and maximize value for their stakeholders, including their customers, employees, and vendors on a go-forward basis. The Sale Order also includes a settlement between the Debtors, the Creditors' Committee, and the Ad Hoc DIP and First Lien Lender Group, which was reached on the eve of the Sale Hearing, that provides for recovery to unsecured creditors and paves the way for a liquidating chapter 11 plan.

As the Court is aware, the sale process was subject to significant litigation, both in connection with the Court's approval of the Debtors' bidding procedures and the entry of the Sale Order.[3]

3.      The Compensation Period,[4] which itself was approximately 40 days, covered several crucial hearings in the Chapter 11 Cases, including the first day hearing and the contested hearing on the Debtors' bidding procedures and final approval of the Debtors' postpetition financing.  The Chapter 11 Cases and the Debtors' business operations are complex, involve significant international and cross-border issues, and have required the Debtors, Latham, and all of the Debtors' (and the Creditors' Committee's) advisors to manage a fulsome sale process in addition to the day-to-day, multi-party disputes at issue in the Chapter 11 Cases.  Latham's depth and ability to manage a complex chapter 11 restructuring, including its ability to use specialist and international resources in an efficient manner, is one of the reasons Latham was retained by the Debtors as chapter 11 counsel.  *See Declaration of Christian M. Mezger in Support of the Application of Debtors for Entry of Order Authorizing the Employment and Retention of Latham & Watkins LLP as Bankruptcy Co-Counsel Effective as of Petition Date* [Docket No. 155-4] (the "**Retention Declaration**") ¶¶ 3-6.  Further, the ability to bring such depth and expertise to bear on the myriad issues arising in the Chapter 11 Cases promotes efficiency.

4.      The Debtors respectfully submit that the fees and expenses sought in the Monthly Fee Application are reasonable and appropriate in light of the scope and complexity of the Chapter 11 Cases.  As described in the Retention Declaration, Latham's fees are comparable to market rates charged by similar law firms and comparable to those charged by Latham in chapter 11 and

---

[3]   Indeed, BMG itself previously filed an objection [Docket No. 122] to the Court's approval of the Debtors' bidding procedures, which objection was overruled in connection with the entry of the bidding procedures order and following BMG's litigation of its objection and questioning of the Debtors' witnesses at the respective hearing.

[4]   As defined in the compensation procedures approved by the Court [Docket Nos. 262 & 461] (collectively, the "**Compensation Procedures**").

non-chapter 11 matters.  *See* Retention Declaration ¶¶ 7-10.  The BMG Objection, which consists almost entirely of blanket assertions that Latham's fees are too high, without any supporting explanation or identifying specifically problematic time entries,[5] is insufficient to establish that Latham's fees are unreasonable.

5.      The BMG Objection should therefore be overruled and the fees and expenses sought in the Monthly Fee Application should be approved as fair and reasonable subject to interim and final approval pursuant to the Compensation Procedures.  BMG should not be permitted to use a non-specific objection to hold up payment of the entirety of the fees and expenses sought in the Monthly Fee Application.   Indeed, the Compensation Procedures provide that allowance of Latham's fees are subject to further review in connection with their approval on an interim and final basis, at which time the Court will also have the benefit of review and input from the Fee Examiner (as defined in the Compensation Procedures).

6.      Before scheduling the hearing on this matter, Latham attempted to reach a consensual resolution with counsel to BMG to avoid the need for a hearing, requesting that BMG consent to release of 80% of fees and 100% of expenses consistent with the Compensation Procedures, subject to the interim and final review and approval process established by the Compensation Procedures, which would have fully preserved BMG's rights without requiring a hearing.  *See* E-mail Correspondence with G. Fox attached as **Exhibit A** hereto.  However, BMG refused.

---

[5]    The sole exception to this in the BMG Objection relates to research performed by a Latham junior associate on a contested tax issue totaling less than 15 hours in the aggregate.  *See* BMG Objection ¶ 26.

## LATHAM'S FEES AND EXPENSES ARE FAIR AND REASONABLE

7.       BMG's principal objection to the Monthly Fee Application appears to be that too many Latham professionals are involved in the Chapter 11 Cases. *See* BMG Objection ¶ 20.  BMG also makes the non sequitur that the "case is not unique as evidenced by the large number of attorneys staffed on each matter and numerous inter-office conferences described in the Application." *Id.*  The BMG Objection relies on baseless allegations that Latham's fees are too high, without substance or addressing the facts of the Chapter 11 Cases.

8.       The Debtors commenced the Chapter 11 Cases in the midst of a global pandemic that has ravaged the global economy and has had a particularly acute impact on the Debtors' key customers in the airline and cruise industries.  Against this backdrop, the Debtors and their advisors, including Latham, have worked under significant pressure to stabilize the Debtors' global businesses, obtain financing to fund the Chapter 11 Cases, and obtain approval of and run a Court-approved sale process pursuant to the RSA.

9.       Latham, for its part, has responded to these challenges by leveraging its broad knowledge base, depth in all required practice areas, and global expertise in an effort to minimize unnecessary or duplicative work.  For example, where a specialized or unique issue has arisen during the course of the Chapter 11 Cases, Latham has relied on specialists in the subject matter for guidance.  Although this results in an increase in the number of attorneys billing in a particular Compensation Period, the Debtors' estates benefit from access to Latham specialists who can quickly answer questions or provide guidance without requiring members of the "core" Latham team to spend hours researching or attempting to familiarize themselves with subject areas in

which they have no expertise.[6]  At the same time, Latham has maintained a smaller core team that manages the Debtors' chapter 11 process.[7]  This is exactly what the Debtors bargained for and expected when Latham was retained to lead the restructuring process.

10.    The Monthly Fee Application includes Latham's detailed time entries summarizing the work performed by Latham during the Compensation Period.  For the avoidance of doubt, however, additional detail regarding the work performed under certain task codes noted in the BMG Objection, and the importance of such work, is provided below:

- Asset Disposition.  This task code includes time spent running a process for the sale of substantially all of the Debtors' assets, including drafting and negotiating sale documents, deal structuring and analysis, reviewing and responding to diligence requests, engaging with potential bidders and preparing and negotiating non-disclosure agreements with the same, and other related tasks, as well as preparing and obtaining Court approval of the bidding procedures.  This work has substantially benefited the Debtors' estates as evidenced by the entry of the Sale Order.

- Employment and Fee Applications.  This task code includes time spent preparing and obtaining Court approval of retention applications for all of the Debtors' advisors, including Latham, Greenhill & Co., LLC, Alvarez & Marsal North America, LLC, Prime Clerk LLC, and PricewaterhouseCoopers LLP, all of which have been necessary to the effective administration of the Chapter 11 Cases and the sale process.  This task code also includes time spent preparing and seeking approval of ordinary course professionals that are necessary to the Debtors' ordinary course business operations.  This task code includes a total of 9.9 hours in the aggregate spent by Latham in preparing the Monthly Fee Application.

- Financing and Cash Collateral.  This task code includes time spent reviewing and negotiating financing documents and preparing and obtaining interim and final Court approval of the Debtors' postpetition financing. The Debtors' $80 million postpetition financing facility and $10 million letter of credit facility have benefited their estates in that they have enabled the Debtors to pursue the value-maximizing sale process for the benefit of all stakeholders, while funding the continued operation of the

---

[6]  Indeed, 29 of the 67 attorney timekeepers included in the Monthly Fee Application billed fewer than five hours during the Compensation Period.

[7]  Just six of the 67 attorney timekeepers included in the Monthly Fee Application billed in excess of 100 hours during the Compensation Period.

       Debtors' businesses, which would have been otherwise impossible without postpetition financing (and which, in turn, would have necessitated immediate liquidation).

- <u>Litigation</u>.   This task code includes time spent, among other things, addressing litigation in connection with the Debtors' postpetition financing and the bidding procedures, including responding to discovery requests from the Creditors' Committee, conducting discovery, taking and defending depositions, and drafting responsive pleadings.   As noted above, this work benefited the Debtors' estates through the Debtors obtaining approval of the postpetition financing and bidding procedures over various objections and, eventually, the Sale Order.

11.     In its only specific allegation, BMG incorrectly claims that time spent by a Latham junior associate conducting research in connection with the Debtors' contested equity trading motion over a number of days is "duplicative." *See* BMG Objection ¶ 26.   While the research was conducted over a period of days, that does not render these time entries "duplicative."   As the Court is aware, the issues litigated in that dispute were complex, the principles were not well-established in existing case law, and the analysis implicated both bankruptcy and tax issues.   The Debtors submit that the time spent on this task was appropriate and was not duplicative.[8]

12.     For all of the above reasons, the Debtors respectfully submit that the BMG Objection should be overruled and the fees and expenses sought in the Monthly Fee Application be approved subject to the Compensation Procedures.

[*Remainder of page left intentionally blank*]

---

[8]   Moreover, the Debtors submit that the case BMC cites on this point, *In re Fleming Co.*, 304 B.R. 85, 93 (Bankr. D. Del. 2003), which involved a fee objection on the basis that, among other things, the case had been staffed "with a disproportionate number of senior personnel," is simply inapplicable to a junior associate's research.

Dated:  November 2, 2020
       Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kara Hammond Coyle*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Betsy L. Feldman (No. 6410)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
       kcoyle@ycst.com
       bfeldman@ycst.com

-and-

**LATHAM & WATKINS LLP**

George A. Davis (admitted *pro hac vice*)
Madeleine C. Parish (admitted *pro hac vice*)
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  george.davis@lw.com
       madeleine.parish@lw.com

-and-

Ted A. Dillman (admitted *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
Nicholas J. Messana (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  ted.dillman@lw.com
       helena.tseregounis@lw.com
       nicholas.messana@lw.com

*Counsel for Debtors and Debtors in Possession*

## EXHIBIT A

### Correspondence with BMG

27280479.1

**From:** Gerard Fox <gfox@gerardfoxlaw.com>
**Sent:** Thursday, October 15, 2020 3:32 PM
**To:** Dillman, Ted (LA) <Ted.Dillman@lw.com>
**Subject:** RE: Global Eagle Fee Objection

Global Eagle should provide for our client.  They promised in front of a Federal District Court judge they intended to pay us no matter what.

**From:** Ted.Dillman@lw.com <Ted.Dillman@lw.com>
**Sent:** Thursday, October 15, 2020 3:31 PM
**To:** Gerard Fox <gfox@gerardfoxlaw.com>
**Subject:** RE: Global Eagle Fee Objection

Very well.

**Ted A. Dillman**

**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100 | Los Angeles, CA 90071-1560
D: +1.213.891.8603 | M: +1.310.806.0774

**From:** Gerard Fox <gfox@gerardfoxlaw.com>
**Sent:** Thursday, October 15, 2020 3:30 PM
**To:** Dillman, Ted (LA) <Ted.Dillman@lw.com>
**Subject:** RE: Global Eagle Fee Objection

Set it for a hearing.  Their fees are egregious.

**From:** Ted.Dillman@lw.com <Ted.Dillman@lw.com>
**Sent:** Thursday, October 15, 2020 2:44 PM
**To:** sjbellew@bellewllc.com; Gerard Fox <gfox@gerardfoxlaw.com>
**Cc:** mnestor@ycst.com
**Subject:** Global Eagle Fee Objection

Gerard and Sean,

Under the standard procedures included in the Bankruptcy Court's *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Granting Related Relief* [Docket No. 262], monthly fee applications only permit payment of 80% of the fees sought; 20% is held back to interim or final approval, and payment of fees under a monthly fee application does not prejudice your client's ability to object to the allowance of interim or final fee applications.

In light of this, please let me know if your client will consent to the payment of Latham's fees under the interim compensation order.  As noted, your client's ability to object to allowance of fees at the interim or final fee application stage is preserved.  We will otherwise set this matter for hearing.  Thank you.


Regards,
Ted


**Ted A. Dillman**

**LATHAM & WATKINS LLP**
355 South Grand Avenue
Los Angeles, CA 90071-1560
Direct Dial: +1.213.891.8603
Mobile: +1.310.806.0774
Fax: +1.213.891.8763
Email: ted.dillman@lw.com
Bio: Attorney Profile
http://www.lw.com


_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.